■ In the Matter of the Dissolution of EL-ROH REALTY CORP. PHILIPPE R. SCHWIMMER, Individually and as Holder of Fifty Percent of the Outstanding Voting Shares of EL-ROH REALTY CORP., Appellant; JOAN ROTH et al., Respondents. In the Matter of the Dissolution of EL-ROH REALTY CORP. PHILIPPE R. SCHWIMMER, Individually and as Holder of Fifty Percent of the Outstanding Voting Shares of EL-ROH REALTY CORP., Appellant; JOAN ROTH et al., Respondents. (Appeal No. 1.) [902 NYS2d 727]—

Appeal from an order of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered April 10, 2009 in a proceeding pursuant to Business Corporation Law article 11. The order, among other things, denied petitioner's motion for summary judgment.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: These consolidated appeals arise from two proceedings pursuant to Business Corporation Law article 11 in which petitioner sought dissolution of El-Roh Realty Corp. (El-Roh). Petitioner owned one half of the voting shares of El-Roh and respondents owned the other half. Petitioner filed her first dissolution petition in 2006 (hereafter, 2006 petition), and respondents asserted a counterclaim seeking specific performance of that part of the shareholders' agreement (agreement) requiring petitioner to offer to sell her shares to El-Roh and the remaining shareholders in the event that she attempted to transfer shares in violation of the agreement. In support of the counterclaim, respondents contended that petitioner triggered the part of the agreement in question by commencing the dissolution proceeding. We previously reversed the order that, inter alia, dismissed the 2006 petition, reinstated the petition and granted respondents' motion for a stay of the proceeding pending determination of the counterclaim (*Matter of El-Roh Realty Corp.* [appeal No. 1], 48 AD3d 1190, 1192 [2008]), and we affirmed the order that, inter alia, granted respondents' motion for partial summary judgment on the counterclaim (*Matter of El-Roh Realty Corp.* [appeal No. 2], 48 AD3d 1193 [2008]). We concluded that Supreme Court prematurely dismissed the petition because, in the event that respondents or El-Roh declined to purchase petitioner's shares, petitioner would be left without a remedy (*id.*).

During the pendency of the appeals from those two orders, petitioner filed a second dissolution petition in 2007 (hereafter, 2007 petition). The first cause of action in the 2007 petition sought dissolution of El-Roh on virtually the same grounds alleged in the 2006 petition, and the second cause of action sought to dissolve the corporation pursuant to Business Corporation Law § 1104 (c) on the additional ground that the shareholders had failed to hold an annual meeting for more than two years and thus failed to elect a board of directors in violation of El-Roh's bylaws. On a subsequent appeal, we modified the order dismissing the 2007 petition by reinstating the second cause of action and by granting respondents' motion to stay the proceeding pending determination of the counterclaim asserted in respondents' answer to the 2006 petition (*Matter of El-Roh Realty Corp.*, 55 AD3d 1431, 1433-1434 [2008]).

Thereafter, El-Roh's independent accountants submitted a valuation of petitioner's shares, after which El-Roh and respondents indicated that they would purchase petitioner's shares based on that valuation. Petitioner refused to sell her shares and moved for, inter alia, summary judgment on the 2006 and 2007 petitions. In support of the motion, petitioner contended that she is entitled to dissolution because respondents failed to purchase the shares pursuant to her offer within the time limits set forth in the agreement.

In appeal No. 1, petitioner appeals from an order that, inter alia, denied that motion. At the outset, we agree with petitioner that the court erred in denying the motion pursuant to the doctrine of law of the case. "The doctrine of . . . 'law of the case' is a rule of practice, an articulation of sound policy that, when an issue is once judicially determined, that should be the end of the matter as far as [j]udges and courts of [coordinate] jurisdiction are concerned" (*Martin v City of Cohoes*, 37 NY2d 162, 165 [1975], *rearg denied* 37 NY2d 817 [1975]; *see United States v United States Smelting Refining & Mining Co.*, 339 US 186, 198 [1950]; *Insurance Group Committee v Denver & Rio Grande Western R. Co.*, 329 US 607, 612 [1947]; *Messenger v Anderson*, 225 US 436, 444 [1912]). The doctrine applies, however, "only to issues that have been judicially determined" (*Edgewater Constr. Co., Inc. v 81 & 3 of Watertown, Inc.* [appeal No. 2], 24 AD3d 1229, 1231 [2005]) and, here, none of the court's prior rulings specifically addressed petitioner's present contention.

Contrary to the further contention of petitioner, however, respondents' acceptance of her offer to sell her shares was not untimely pursuant to the terms of the agreement. Pursuant to well-settled rules of contract interpretation, "when parties set

down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). The contract must be "read as a whole to determine its purpose and intent" (*id.*), and it "should be interpreted in a way [that] reconciles all its provisions, if possible" (*Green Harbour Homeowners' Assn., Inc. v G.H. Dev. & Constr., Inc.*, 14 AD3d 963, 965 [2005]; *see Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]). "Effect and meaning must be given to every term of the contract . . . , and reasonable effort must be made to harmonize all of its terms . . . Moreover, the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose" (*Village of Hamburg v American Ref-Fuel Co. of Niagara*, 284 AD2d 85, 89 [2001], *lv denied* 97 NY2d 603 [2001]; *see Niagara Frontier Transp. Auth. v Euro-United Corp.*, 303 AD2d 920, 921 [2003], *amended on rearg* 306 AD2d 952 [2003]; *Reda v Eastman Kodak Co.* [appeal No. 2], 233 AD2d 914, 914-915 [1996]; *see generally Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 171-172 [1973]).

Here, the primary purpose of the agreement and the intent of the shareholders who prepared it was to preserve the closely-held nature of El-Roh, which the agreement accomplished by granting the corporation and each shareholder the right to purchase shares of capital stock if a shareholder attempted to transfer his or her shares outside the corporation. The agreement set up a process whereby any proposed transfer of shares of capital stock was deemed an offer by the owner to sell to the corporation all of his or her shares of capital stock. The price for the sale was to be determined by mutual yearly agreement of the shareholders at the annual shareholders' meeting, after they reviewed a report prepared by El-Roh's independent accountants. Where, as here, no such agreement had been made within the 12 months preceding the date of the attempted transfer, "the [p]urchase [p]rice and all component parts thereof shall be calculated by the independent certified public accountants then engaged by the [c]orporation." The corporation and the remaining shareholders were required to purchase the stock at the price determined by that process within 120 days after the corporation received notice of the offer.

We agree with respondents that the only reasonable interpretation of those provisions in the agreement that gives effect to all provisions and the intent of the shareholders is that the corporation and shareholders are entitled to know the purchase price of the shares before determining whether to purchase them. There is no support in the agreement for petitioner's

contention to the contrary. It would be commercially unreasonable and absurd to require respondents to agree to purchase petitioner's shares without knowing the price (*see Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170 [2003]). Consequently, the court properly determined that petitioner's offer could be accepted within 120 days from the date upon which the accountants' report was issued, and that respondents' acceptance therefore was timely. Petitioner's remaining contention with respect to appeal No. 1 is moot in light of our determination.

In appeal No. 2, petitioner appeals from an order that denied her motion for, inter alia, an order declaring that the 2003 amendment to the agreement rendered the acceptances by respondents of her offer to sell her shares defective based on their failure to comply with the requisite method of payment, as well as for an order directing that the proceeds from a life insurance policy on the life of her predecessor in interest in El-Roh be paid to the shareholders in proportion to their ownership interest. Petitioner contended in support of the motion that the 2003 amendment voided the original provisions in the agreement with respect to the method of payment for her shares. We conclude that the court properly rejected that contention pursuant to the doctrine of law of the case. The court determined that issue in a prior order that, inter alia, granted respondents' motion for partial summary judgment on the counterclaim, which we affirmed on appeal (*El-Roh Realty Corp.*, 48 AD3d 1190 [2008]). Consequently, the contention of petitioner was "previously raised and decided against [her] . . . [, and thus] 'reconsideration of [the] issue[ ] is barred by the doctrine of law of the case' " (*Matter of Suzuki-Peters v Peters*, 37 AD3d 726 [2007], *lv denied* 9 NY3d 814 [2007]; *see Matter of Shondell J. v Mark D.*, 18 AD3d 551 [2005], *affd* 7 NY3d 320 [2006]).

Contrary to the further contention of petitioner, the 2003 amendment to the agreement does not require that the corporation pay, as a dividend to the shareholders in proportion to their ownership interest, the proceeds from the life insurance policy on the life of her predecessor in interest. Although the 2003 amendment altered certain provisions of the agreement with respect to the transfer of capital stock, it did not change the method of disbursing the proceeds of the life insurance policy of a shareholder. Rather, the shareholders agreed to negotiate in good faith with respect to those proceeds. "Because the parties [to the agreement] left for future negotiation an essential term, i.e., [the disposition of the proceeds from the life insurance policy of a shareholder, that part of] their letter agreement is 'a

mere agreement to agree' and is thus unenforceable" (*Uniland Partnership of Del. L.P. v Blue Cross of W. N.Y. Inc.*, 27 AD3d 1131, 1132 [2006], *lv denied* 7 NY3d 713 [2006], quoting *Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d 105, 109 [1981]). Thus, there was no enforceable agreement to pay the proceeds from such policies to the shareholders, and the original provisions of the agreement continued to govern the disbursement of the proceeds from the life insurance policy in question.

We have considered petitioner's remaining contention with respect to appeal No. 2, and conclude that it is without merit. Present—Martoche, J.P., Smith, Centra, Sconiers and Pine, JJ.