*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    July 10, 2014                    517481
                                                          517800
                                                          518007
_____

A. CAPPIONE, INC., et al.,
                    Respondents,

        v                                    MEMORANDUM AND ORDER

MARC J. CAPPIONE et al.,
                    Appellants.
_____

Calendar Date:   June 4, 2014

Before:   Peters, P.J., Stein, Rose, Egan Jr. and Clark, JJ.

                        _____


        Menter, Rudin & Trivelpiece, PC, Syracuse (Julian B.
Modesti of counsel), for appellants.

        Hodgson Russ, LLP, Buffalo (Ryan K. Cummings of counsel),
for respondents.

                        _____


Egan Jr., J.

        Appeals (1) from an order of the Supreme Court (Demarest,
J.), entered May 28, 2013 in St. Lawrence County, which, among
other things, granted plaintiffs' cross motion for summary
judgment declaring, among other things, that defendant Marc J.
Cappione was required to sell his shares in plaintiff A.
Cappione, Inc., (2) from an order of said court, entered November
6, 2013 in St. Lawrence County, which, among other things,
granted plaintiffs' motion to compel Marc J. Cappione's
compliance with the prior order, and (3) from an order of said
court, entered December 4, 2013 in St. Lawrence County, which,
among other things, partially denied defendants' motion for
reconsideration.

At all times relevant, defendant Marc J. Cappione (hereinafter Cappione) and plaintiffs David P. Cappione and John R. Cappione each owned a one-third shareholder interest in plaintiff A. Cappione, Inc., a closely-held, family corporation engaged in the business of wholesale beer distribution, which includes an exclusive distribution agreement with Anheuser-Busch, Inc. As a distributor of alcoholic beverages, the corporation was subject to the licensing requirements, rules and regulations of the State Liquor Authority (see Alcoholic Beverage Control Law § 17). Following Cappione's felony conviction of attempted dissemination of indecent materials to a minor in the first degree, for which he currently is serving a term of imprisonment, the corporation's board of directors voted in July 2011 to retroactively terminate Cappione's employment effective March 30, 2011. Pursuant to the shareholders' agreement, Cappione's involuntary loss of employment entitled the corporation to purchase his ownership interest therein. To that end, an independent valuation of the corporation was conducted in accordance with the terms of the shareholders' agreement and, in May 2012, a report was issued valuing Cappione's shares in excess of $911,000 as of March 31, 2011.

Subsequent efforts to redeem Cappione's shares met with resistance, prompting plaintiffs to commence this declaratory judgment action seeking, among other things, to compel Cappione to sell his ownership shares pursuant to the terms of the shareholders' agreement.[1] Defendants' pre-answer motion to dismiss was converted to a motion for summary judgment dismissing the complaint, wherein defendants argued that the corporation failed to exercise its purchase option in strict compliance with the time limits set forth in the shareholders' agreement and,

---

[1] Shortly thereafter, plaintiffs received notice that the Division of Alcoholic Beverage Control had commenced a proceeding to cancel or revoke the corporation's license based upon the fact that Cappione, as an officer of the corporation, had been convicted of a felony (see Alcoholic Beverage Control Law § 126 [4]).

therefore, Cappione should be permitted to retain his ownership interest. Plaintiffs cross-moved for summary judgment noting, among other things, that Cappione, as a convicted felon, was precluded from engaging in the trafficking of alcoholic beverages (see Alcoholic Beverage Control Law § 126 [1]). By order entered May 28, 2013, Supreme Court, among other things, granted plaintiffs' cross motion, without prejudice to defendants' right – as per the shareholders' agreement – to dispute the valuation of the shares. Defendants thereafter appealed from the May 2013 order.

Plaintiffs subsequently moved, by order to show cause, to enforce the May 2013 order, and defendants cross-moved for a stay pending appeal. By order entered November 6, 2013, Supreme Court, among other things, granted plaintiffs' motion and directed that Cappione's shares be turned over to plaintiffs' counsel within seven days. Defendants appealed from the November 2013 order and, further, moved before this Court for a temporary restraining order and a stay of enforcement of both the May 2013 and November 2013 orders. A Justice of this Court denied the requested temporary restraining order and set a return date for the motion. Defendants then moved before Supreme Court seeking, among other things, to renew their application for a stay pending this Court's determination of their motion. By order entered December 4, 2013, Supreme Court, among other things, granted defendants' motion to the extent that enforcement of the prior orders was stayed until a determination of defendants' then pending motion before this Court. This Court thereafter denied the requested stay and, pursuant to the terms of Supreme Court's December 2013 order, Cappione's shares immediately transferred to plaintiffs. Defendants now appeal from the December 2013 order as well.

We affirm. A shareholders' agreement – like any other contract – should be enforced according to its terms (see Matter of Penepent Corp., 96 NY2d 186, 192 [2001]). In so doing, "[t]he contract must be read as a whole to determine its purpose and intent, and it should be interpreted in a way [that] reconciles all its provisions, if possible" (Matter of El-Roh Realty Corp.,

74 AD3d 1796, 1799 [2010] [internal quotation marks and citations omitted]).  To that end, "the goal should be a practical construction of the language used so that the reasonable expectations of the parties are realized" (Currier, McCabe & Assoc., Inc. v Maher, 75 AD3d 889, 891-892 [2010]), and "the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose" (Matter of El-Roh Realty Corp., 74 AD3d at 1799 [internal quotation marks and citation omitted]).

Here, the shareholders' agreement reflects "[t]he shareholders['] desire to establish a market value for their shares, to effectively control the management of the company, for their mutual best interests, and to protect against divisive relationships which would arise if outsiders with incompatible management philosophies gained interests in the company." Consistent with that stated objective, the agreement further recognizes that "[t]he company is dependent upon and derives substantial benefit from the continued active interest and participation of those shareholders who participate in the management of the company."  In an attempt to preserve the closely-held nature of the corporation, the agreement provides that when a shareholder's employment with the corporation ceases, "he or she shall be treated as though he or she were selling all of his or her shares under paragraph A of . . . [s]ection [t]wo [of the agreement]," which outlines the procedures to be followed when a shareholder, during the course of his or her lifetime, "transfer[s] any of his or her shares to anyone other than a family member."  In such case, the shareholder is to give notice of his or her intention to sell and, "[f]or a period of thirty [30] days after the notice is delivered, the [corporation] shall have an option to purchase all or any part of the offered shares on the payment terms specified in [s]ection [f]our [of the agreement]."  If the corporation does not exercise such option, then the remaining shareholders are granted an additional 30-day option to purchase any or all of the available shares.

Here, the corporation's board of directors voted to purchase Cappione's shares on July 5, 2011 – the same day

Cappione was terminated from his employment due to his criminal conduct.  According to defendants, because Cappione's termination was made retroactive to March 30, 2011, the corporation necessarily did not exercise its option to purchase his shares within the 30-day period set forth in the shareholders' agreement and, therefore, he is entitled to retain his ownership interest in the corporation.  Assuming, without deciding, that the retroactive termination date adopted by the corporation necessarily rendered its option to purchase untimely, the underlying shareholders' agreement nonetheless is not amenable to the strained construction now urged by defendants.

There is no question that the shareholders' agreement does not expressly address the precise situation posed here – namely, where the corporation (in the form of David Cappione and John Cappione) purportedly fails to exercise its purchase option within the initial 30-day window, there are no "other shareholders" remaining to exercise the purchase option outlined in section two, paragraph A of the agreement and the shareholder whose shares are sought to be purchased not only is no longer employed by the corporation but, more to the point, by virtue of his underlying felony conviction, is statutorily precluded from trafficking in alcoholic beverages.  That said, reading the agreement as a whole and affording it a practical construction that is consistent with and gives proper effect to the parties' stated intentions (see Currier, McCabe & Assoc., Inc. v Maher, 75 AD3d at 891-892), we are satisfied that Supreme Court properly granted plaintiffs' motion to compel Cappione to sell his shares to the corporation – even if that option to purchase was not timely exercised.  To hold otherwise and permit Cappione to retain his shares due to the asserted noncompliance with the time period set forth in the shareholders' agreement not only would effectively rewrite the parties' agreement and undermine its stated purpose, i.e., to retain managerial control within the closely-held family corporation, but would place the corporation at risk of losing its distributor's license, thereby rendering its stock worthless.  Furthermore, as aptly noted by Supreme Court, there is no discernible prejudice flowing from the corporation's asserted failure to strictly comply with the time

period set forth in the agreement.  Accordingly, Supreme Court's orders directing the transfer of Cappione's shares in the corporation are affirmed.  In light of this conclusion, we need not address the remaining arguments raised by defendants on appeal, including their claimed entitlement to an automatic stay under CPLR 5519 (a) (4).

Peters, P.J., Stein, Rose and Clark, JJ., concur.


ORDERED that the orders are affirmed, with costs.




ENTER:

Robert D. Mayberger
Clerk of the Court