In the Matter of WILLIAM M. OLSZEWSKI et al., Respondents, v CANNON POINT ASSOCIATION, INC., et al., Appellants. [49 NYS3d 571]—

Egan Jr., J. Appeals (1) from an order of the Supreme Court (Krogmann, J.), entered May 5, 2015 in Warren County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, among other things, denied respondents' motion to dismiss the petition/complaint, and (2) from a judgment of said court, entered January 5, 2016 in Warren County, which granted petitioners' motion for summary judgment.

Cannon Point is a condominium community located in the Town of Lake George, Warren County. The community consists of two, 24-unit condominium associations, respondent Cannon Point Condominium I and respondent Cannon Point Condominium II, and a homeowners' association, respondent Cannon Point Association, Inc. (hereinafter HOA). Each of the three associations is governed by a declaration and set of bylaws[1] and is managed by a board that, in turn, is elected by unit owners and/or members.[2] The community's common areas, including tennis and basketball courts, picnic areas, a club house (known as the Manor House), the beach (together with adjacent docks and boat slips) and roadways, are managed by the HOA board of directors.

By letter dated March 25, 2014, the HOA board of directors advised condominium owners—including petitioners—that they had unanimously approved the "Cannon Point House Rules and Regulations" (hereinafter the 2014 rules)—effective April 1, 2014. Insofar as is relevant here, the 2014 rules imposed numerous limitations and restrictions upon condominium owners wishing to lease their properties—including, but not limited to, a requirement that no unit may be rented for a period of less than two weeks and a prohibition barring renters from ac-

---

1. Amendments to each association's declarations or bylaws requires a vote of a specified percentage of its homeowners/members; if approved, recording of such amendments in the Warren County Clerk's office is required—by either the express terms of those documents or operation of Real Property Law article 9-B—in order for the amendments to be effective (see Real Property Law §§ 339-s, 339-u).

2. Unit owners automatically become members of the HOA by virtue of their ownership of a condominium unit.

cess to the Manor House.[3] Lessees who rented a condominium for less than 90 days also were precluded from having guests or pets on the property. Owners who elected to rent their properties were required to pay a rental fee and an administrative fee to the HOA, and owners who failed to comply with the provisions of the 2014 rules were subject to fines and penalties.

Petitioners thereafter commenced this combined CPLR article 78 proceeding and action for declaratory judgment to challenge and enjoin the 2014 rules.[4] Specifically, petitioners argued, among other things, that the rental restrictions imposed by the 2014 rules violated each condominium association's bylaws, which provided, in relevant part, that "[a]ny [h]ome may be conveyed or leased by its . . . [o]wner free of any restrictions"—provided the common charges or HOA expenses assessed against such unit have been paid. Respondents filed a pre-answer motion to dismiss, contending that the petition was time-barred and failed to state a cause of action and that judicial review thereof was precluded by the business judgment rule. By order entered May 5, 2015, Supreme Court denied respondents' motion to dismiss and preliminarily enjoined enforcement of the 2014 rules. Respondents then answered and moved by order to show cause for an order vacating or modifying the preliminary injunction, and petitioners cross-moved for summary judgment seeking, among other things, a declaration that the 2014 rules were null and void. By order entered January 5, 2016, Supreme Court granted petitioners' motion for summary judgment finding, among other things, that the HOA board of directors exceeded its authority by imposing the 2014 rules without amending the relevant bylaws. These appeals by respondents ensued.

Preliminarily, respondents' appeal from Supreme Court's May 2015 order must be dismissed because "[n]o appeal as of right lies from a nonfinal order in a CPLR article 78 proceeding" and, in the context of a declaratory judgment action, "the right to appeal from a nonfinal order terminates upon the entry of a final judgment" (*Matter of 1801 Sixth Ave., LLC v Empire Zone Designation Bd.*, 95 AD3d 1493, 1495 [2012] [internal quotation marks and citations omitted], *lv dismissed* 20 NY3d

---

**3.** As relevant here, the primary distinguishing feature between the 2014 rules and the rules previously adopted by the HOA board of directors in 2004 and 2012 was the minimum rental period; under both the 2004 and 2012 rules, which apparently went unchallenged, one-week rentals were permitted.

**4.** Petitioners purchased their respective parcels at the end of 2012, and petitioner William M. Olszewski expressly averred that he was unaware of the 2012 rules prior to closing.

966 [2012]). Additionally, we reject respondents' assertion that this combined CPLR article 78 proceeding and action for declaratory judgment is untimely. As Supreme Court observed and the record reflects, petitioners were notified of the 2014 rules by letter dated March 25, 2014 and commenced this proceeding/action within four months thereof.

Turning to the merits, the present dispute primarily centers upon whether the 2014 rules adopted by the HOA board of directors, which imposed numerous limitations upon a homeowner's rental of his or her property, conflict with the relevant provisions of each condominium association's bylaws—specifically, the provision granting a homeowner the right to convey or lease his or her home "free of any restrictions" (provided the common charges or HOA expenses assessed against each unit have been paid)—and, more to the point, whether the HOA board of directors exceeded its authority by adopting such rules absent an amendment to the subject bylaws. To our analysis, the answer to these questions is yes and, hence, Supreme Court properly granted petitioners' motion for summary judgment.

"Condominium ownership is a hybrid form of real property ownership, created by statute" (*Board of Mgrs. of Vil. View Condominium v Forman*, 78 AD3d 627, 629 [2010] [citations omitted], *lv denied* 17 NY3d 704 [2011]; *see* Real Property Law art 9-B), and "may be described as a division of a parcel of real property into individual units and common elements in which an owner holds title in fee to his [or her] individual unit as well as retaining an undivided interest in the common elements of the parcel" (*Schoninger v Yardarm Beach Homeowners' Assn.*, 134 AD2d 1, 5-6 [1987]). "Once a condominium is created, 'the administration of the condominium's affairs is governed principally by its bylaws, which are, in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units and the condominium's common elements' " (*Glenridge Mews Condominium v Kavi*, 90 AD3d 604, 605 [2011], quoting *Schoninger v Yardarm Beach Homeowners' Assn*, 134 AD2d at 6; *see Board of Mgrs. of Vil. View Condominium v Forman*, 78 AD3d at 629).

The governing documents at issue here, i.e., each condominium association's bylaws and declarations, are contracts, and our review and analysis thereof is governed by principles of contract interpretation that are both familiar and well-settled. As a starting point, "[i]t is axiomatic that a contract is to be construed in accordance with the parties' intent, which is

generally discerned from the four corners of the document itself. Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Maldonado v DiBre*, 140 AD3d 1501, 1506 [2016] [internal quotation marks and citations omitted], *lv denied* 28 NY3d 908 [2016]; *see Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]; *Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc.*, 144 AD3d 1252, 1253 [2016]). Further, "the contract must be read as a whole to determine its purpose and intent, and it should be interpreted in a way that reconciles all its provisions, if possible" (*A. Cappione, Inc. v Cappione*, 119 AD3d 1121, 1122-1123 [2014] [internal quotation marks, brackets and citations omitted]; *see Beal Sav. Bank v Sommer*, 8 NY3d at 324-325; *Siebel v McGrady*, 170 AD2d 906, 907 [1991], *lv denied* 78 NY2d 853 [1991]). To that end, "[a] reading of the contract should not render any portion [thereof] meaningless" (*Beal Sav. Bank v Sommer*, 8 NY3d at 324; *see Durrans v Harrison & Burrowes Bridge Constructors, Inc.*, 128 AD3d 1136, 1138 [2015]; *Siebel v McGrady*, 170 AD2d at 907), "and the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose" (*A. Cappione, Inc. v Cappione*, 119 AD3d at 1123 [internal quotation marks and citations omitted]). Finally, a "court[ ] may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks and citations omitted]) and, if the contract is clear and complete on its face, extrinsic evidence may not be used to create an ambiguity where one does not otherwise exist (*see South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 278 [2005]; *Matter of Delmar Pediatrics Asthma & Allergy Care, P.C. [Pasternack—Looney]*, 35 AD3d 987, 988 [2006]).

Initially, we reject respondents' assertion that the relevant declarations and bylaws contain competing contractual provisions that, in turn, create an ambiguity, thereby precluding an award of summary judgment to petitioners. As noted previously, each condominium association's bylaws (as well as the HOA's bylaws) clearly, expressly and unequivocally provide that "[a]ny [h]ome may be conveyed or leased by its . . . [o]wner free of any restrictions"—the sole caveat being that the common charges or HOA expenses assessed against such unit have been paid. Each condominium association's bylaws also contain a provision acknowledging that its board of managers may "make reasonable rules and regulations and . . . amend

the same from time to time, and [that] such rules and regulations and amendments shall be binding upon the [homeowners] when the [b]oard has approved them in writing" and delivered a copy thereof to each home. A similar provision is embodied in the HOA's bylaws, which reflects that the HOA's affairs shall be managed by its board of directors and enumerates the powers granted thereto. In this regard, one of the powers granted to the HOA's board of directors is "[t]o make reasonable rules and regulations and to amend same from time to time. Such rules and regulations and amendments thereto shall be binding upon the [m]embers when the [b]oard has approved them in writing and delivered a copy of such rules and all amendments to each [m]ember. Such rules and regulations may, without limiting the foregoing, include reasonable limitations on the use of the [c]ommon [p]roperties by guests of the [m]embers, as well as reasonable admission and other fees for such use."

Reading these provisions as a whole, as we must, the import of the quoted language is clear—respondents indeed may adopt reasonable rules and regulations relative to the business and/or property of the condominium associations and/or the HOA *provided* such rules and regulations do not conflict with or purport to impair a right expressly granted to the individual homeowners (such a petitioners) by the relevant bylaws. Here, the 2014 rules impose various requirements/restrictions upon homeowners who wish to lease their properties—requirements and restrictions that do not appear anywhere in the governing bylaws and, more to the point, are in direct conflict with the provisions thereof granting homeowners the right to convey or lease their properties "free of any restrictions."[5] Under these circumstances, the plain and unequivocal provisions of the bylaws relative to the rental of individual homeowner units precludes respondents—specifically, the HOA board of directors—from unilaterally adopting the 2014 rules in the fashion accomplished here.[6] To hold otherwise would render meaningless the provisions permitting homeowners to convey or lease their properties "free of any restrictions."

---

**5.** Although we decline to substantively address each provision of the 2014 rules, we note in passing that a further conflict appears between a provision in the rules barring renters access to the Manor House and a provision in the HOA's bylaws that provides, in relevant part, that "[i]n the event that a [m]ember shall lease or permit another to occupy his [or her] [h]ome, the lessee or occupant shall[,] at the option of the [m]ember, be permitted to enjoy the use of the [c]ommon [p]roperties in lieu of and subject to the same restrictions and limitations as said [m]ember."

**6.** Contrary to respondents' assertion, the fact that the HOA board of directors previously adopted similar rules in 2004 and 2012 without appar-

That is not to say that respondents (again, particularly the HOA board of directors) cannot adopt reasonable rules governing, among other things, the rental of individual homeowner units. Indeed, it has been observed that, as a general proposition, "[b]ecause of the manner in which ownership in a condominium is structured, the individual unit owner, in choosing to purchase the unit, must give up certain of the rights and privileges which traditionally attend fee ownership of real property and agree to subordinate them to the group's interest" (*Schoninger v Yardarm Beach Homeowners' Assn.*, 134 AD2d at 6). Here, however, petitioners expressly were granted the right to lease their properties free of any restrictions; hence, to the extent that respondents wish to impose rules in this area, they may do so—but only if the rules so adopted do not in fact conflict with the rights and privileges conveyed to petitioners (and similarly situated homeowners) pursuant to the relevant provisions of the bylaws or, failing that, respondents successfully avail themselves of the procedures set forth in the declarations and bylaws relative to the amendment thereof. If, as respondents assert, the impact of short-term rentals upon the character of the Cannon Point community is so injurious as to warrant adoption of the restrictions imposed by the 2014 rules, then their task is to persuade the required percentage of each association's homeowners/members as to the merit of their position and amend the bylaws accordingly. Absent appropriate amendment to the relevant governing documents, however, the 2014 rules constitute an impermissible exercise of respondents' powers (*see Board of Mgrs. of Vil. View Condominium v Forman*, 78 AD3d at 630). Further, as respondents' actions were unauthorized, their actions were not protected by the business judgment rule (*see Yusin v Saddle Lakes Home Owners Assn., Inc.*, 73 AD3d 1168, 1171 [2010]; *Strathmore Ridge Homeowners Assn., Inc. v Mendicino*, 63 AD3d 1038, 1039 [2009]).

As we are satisfied that petitioners demonstrated their entitlement to judgment as a matter of law and, further, that respondents failed to raise a triable issue of fact in opposition thereto, Supreme Court properly granted petitioners' motion for summary judgment. In light of this conclusion, respondents' arguments relative to the granting of the preliminary injunction are academic. Respondents' remaining contentions, to the extent not specifically addressed, including their assertion that the rental rules adopted in 2012 should somehow be revived, have been examined and found to be lacking in merit.

---

ent objection from homeowners is of no moment. If the rules adopted are contrary to the provisions of the relevant bylaws, the rules cannot stand—at least not without amending the subject bylaws.

Peters, P.J., McCarthy, Rose and Mulvey, JJ., concur. Ordered that the appeal from the order is dismissed. Ordered that the judgment is affirmed, with costs.