Laker v Association of Prop. Owners of Sleepy Hollow Lake, Inc. (2019 NY Slip Op 03857)





Laker v Association of Prop. Owners of Sleepy Hollow Lake, Inc.


2019 NY Slip Op 03857


Decided on May 16, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 16, 2019

526421

[*1]ROBERT LAKER et al., Respondents,
v
ASSOCIATION OF PROPERTY OWNERS OF SLEEPY HOLLOW LAKE, INC., et al., Appellants.

Calendar Date: March 27, 2019

Before: Egan Jr., J.P., Devine, Aarons and Rumsey, JJ.


McNamee Lochner PC, Albany (John J. Privitera of counsel), for appellants.
Tabner, Ryan & Keniry, LLP, Albany (Brian M. Quinn of counsel), for respondents.



MEMORANDUM AND ORDER
Devine, J.
Appeal from an order of the Supreme Court (Elliott III, J.), entered February 5, 2018 in Greene County, which, among other things, granted plaintiffs' motion for a preliminary injunction.
Plaintiffs own real property in the Sleepy Hollow Lake subdivision and took title subject to a declaration of protective covenants (hereinafter the declaration). Defendant Association of Property Owners of Sleepy Hollow Lake, Inc. (hereinafter the Association) is a corporation created to "establish, promulgate and enforce codes and rules" for property owners and common areas within the subdivision, and its bylaws provide that it is governed by defendant Board of Directors of the Association (hereinafter the Board). In 2013, the Board adopted a written policy requiring property owners who rented their homes to obtain a conditional use permit from the Association and pay an annual fee, as well as setting a fine for noncompliance. The Board amended the rental policy on November 15, 2016 to, among other things, bar rentals lasting less than 30 days, require a new permit and higher fee for every rental, and increase the fines imposed for unsanctioned rentals. Existing short-term rental agreements were grandfathered in through the end of 2017, and the deadline for entering into new short-term rental agreements, as later extended, was March 31, 2017.
Shortly before that deadline, plaintiffs commenced the present action seeking a declaration that the amended rental policy was invalid and damages under several legal theories. Plaintiffs simultaneously moved for a preliminary injunction barring the new rental restrictions from taking effect. Defendants, in lieu of serving an answer, cross-moved to dismiss the complaint as untimely and failing to state a cause of action. Supreme Court granted plaintiffs' motion and denied defendants' cross motion, and defendants appeal.
We affirm. Plaintiffs' attacks upon the adoption of the amended rental policy by the Board, although styled as requests for a declaratory judgment, are challenges to the [*2]administrative act of a "body or officer" that could have been asserted in a CPLR article 78 proceeding and are therefore subject to a four-month statute of limitations (CPLR 7802 [a]; see CPLR 217 [1]; Matter of American Univ. of Antigua v CGFNS Intl., 126 AD3d 1146, 1148-1149 [2015]; Bango v Gouverneur Volunteer Rescue Squad, Inc., 101 AD3d 1556, 1557 [2012])[FN1]. The Board adopted the amended rental policy on November 15, 2016 — more than four months before the commencement of this action — but then signaled that it was open to compromise and encouraged aggrieved property owners to forgo litigation and help develop an alternate rental policy. The Board delayed implementation of the amended policy until March 31, 2017 to allow that "reconsideration" to occur, and did not make clear that it was moving forward with the amended rental policy, as well as higher fines than those contemplated in November 2016, until approximately March 16, 2017. It was incumbent upon defendants "to demonstrate the existence of a final and binding determination" beyond the four-month statute of limitations and, inasmuch as their actions left it unclear whether the amended rental policy was final and binding until two weeks before the commencement of this action, we agree with Supreme Court that the action is timely (Matter of Turner v Bethlehem Cent. School Dist., 265 AD2d 640, 641 [1999]; see Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 358 [1978]; Matter of Catskill Regional Off-Track Betting Corp v New York State Racing & Wagering Bd., 56 AD3d 1027, 1029-1030 [2008]).
As for defendants' efforts to dismiss the action as failing to state a claim, "[w]e accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141 [2017]). Defendants suggest that plaintiffs' claims must fall because of the business judgment rule, which "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes" (Auerbach v Bennett, 47 NY2d 619, 629 [1979]; see M & M Country Store, Inc. v Kelly, 159 AD3d 1102, 1103 [2018]). Plaintiffs respond that the business judgment rule does not bar their claims, as the Board's adoption of the amended rental policy was not legitimate and "exceed[ed] [its] authority under the relevant corporate bylaws" (Matter of People v Lutheran Care Network, Inc., 167 AD3d 1281, 1286 [2018]; see 40 W. 67th St. v Pullman, 100 NY2d 147, 155 [2003]; Matter of Olszewski v Cannon Point Assn., Inc., 148 AD3d 1306, 1311 [2017]; Yusin v Saddle Lakes Home Owners Assn., Inc., 73 AD3d 1168, 1171 [2010]).
The Association is empowered by its bylaws to establish and enforce rules "for the harmonious efficient operation and management of [the subdivision,] including but not limited to providing mutual and beneficial restrictions on the use and development of each [l]ot in the [s]ubdivision and the use of the [c]ommon [a]reas." The bylaws and declaration also stress, however, that they must be read together. The bylaws and declaration contain no indication that rentals by owners are prohibited; to the contrary, the declaration subjects leases to its restrictions, the declaration and bylaws define lessees as lot owners under certain circumstances, and the bylaws grant associate membership in the Association to "tenants or regular occupants of" a subdivision residence. The declaration does restrict the use of subdivision lots to single-family dwellings, but the amended rental policy is not limited to ensuring that short-term renters maintain "a residential dwelling for one or more persons each related to the other by blood, marriage or legal adoption, or a group of not more than three (3) persons not so related" so as to fall within the meaning of that term. Likewise, the blanket short-term rental restrictions and [*3]severe fees and fines imposed by the amended rental policy encompass far more than a permissible attempt by the Board to regulate a renter's use of common areas in the subdivision. Accordingly, "[a]bsent appropriate amendment to the relevant governing documents," the amended rental policy exceeded defendants' powers (Matter of Olszewski v Cannon Point Assn., Inc., 148 AD3d at 1311; see Gabriel v Board of Mgrs. of the Gallery House Condominium, 130 AD3d 482, 483 [2015]; Yusin v Saddle Lakes Home Owners Assn., Inc., 73 AD3d at 1170-1171). Regardless of the applicability of any other exceptions to the business judgment rule, the foregoing establishes that plaintiffs' otherwise facially valid challenges to the amended rental policy are not barred by it.
As a final matter, "[a] party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of the equities in its favor" (Biles v Whisher, 160 AD3d 1159, 1160 [2018] [internal quotation marks and citations omitted]; see CPLR 6301). Plaintiffs, as set out above, have a probability of success on the merits. Several plaintiffs further averred that they purchased their properties as second or retirement homes, they use the income from short-term rentals to satisfy the carrying costs on their homes, and they detailed how their use and even ownership of the homes would be jeopardized if that income stream was stopped by the amended rental policy. Defendants gave no reason to believe that these claims of irreparable harm were illusory, nor did they provide any detail as to what hardship the subdivision community would suffer if the status quo were preserved. Thus, Supreme Court providently exercised its discretion in granting the preliminary injunction requested by plaintiffs (see Spivak v Bertrand, 147 AD3d 650, 651-652 [2017]; Church of God Pentcostal Fountain of Love, MI v Iglesia de Dios Pentecostal, MI, 27 AD3d 685, 687 [2006]).
To the extent not addressed above, defendants' claims have been examined and lack merit.
Egan, Jr., J.P., Aarons and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Plaintiffs suggest that this appeal from a nonfinal order must be dismissed insofar as defendants portray their claims as ones that could have been asserted in a CPLR article 78 proceeding (see CPLR 5701 [b] [1]). This overlooks that the complaint contains causes of action beyond the direct challenge to the amended rental policy that could not be asserted in such a proceeding. In any event, even if the nonfinality of the appealed-from order were a problem, we would "exercise our authority to grant permission to appeal" (Matter of Brown v Goord, 45 AD3d 930, 931 n [2007], lv dismissed 10 NY3d 796 [2008]; see CPLR 5701 [c]).