Ali-Hasan v St. Peter's Health Partners Med. Assoc., P.C. (2024 NY Slip Op 01966)

Ali-Hasan v St. Peter's Health Partners Med. Assoc., P.C.

2024 NY Slip Op 01966

Decided on April 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 11, 2024

CV-23-0988
[*1]Samer Ali-Hasan, Appellant,
v
St. Peter's Health Partners Medical Associates, P.C., et al., Respondents.

Calendar Date:February 22, 2024

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ.

Cooper Erving & Savage LLP, Albany (Phillip G. Steck of counsel), for appellant.
Bond, Schoeneck & King, PLLC, Syracuse (Adam P. Mastroleo of counsel), for respondents.

Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (L. Michael Mackey, J.), entered May 26, 2023 in Albany County, which granted defendants' motion for summary judgment dismissing the complaint.
Defendant St. Peter's Health Partners (hereinafter SPHP) is a not-for-profit healthcare network that provides a myriad of medical services through its multiple affiliates. Defendant St. Peters Health Partners Medical Associates, P.C. (hereinafter SPHPMA), one of SPHP's affiliates, is a multi-specialty physician group with various medical practices. Albany Associates in Cardiology is one of SPHPMA's affiliated medical practices. Plaintiff, an interventional cardiologist, was employed by SPHPMA in the Albany Associates in Cardiology group. On April 3, 2018, plaintiff entered into a written employment agreement with SPHPMA setting forth the terms and conditions of his employment, including various provisions regarding termination.
In July 2019, SPHPMA terminated the agreement for convenience, pursuant to paragraph IX.B.1 of the employment agreement. Thereafter, plaintiff commenced the instant action alleging breach of contract. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion and dismissed the action. Plaintiff appeals, and we affirm.
"When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations. Furthermore, summary judgment can only be granted when the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action" (Stanhope v Burke, 220 AD3d 1122, 1123 [3d Dept 2023] [internal quotation marks and citations omitted]; see EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d 1720, 1721-1722 [3d Dept 2020]). "To recover for a breach of contract, a party must establish the existence of a contract, the party's own performance under the contract, the other party's breach of its contractual obligations, and damages resulting from the breach" (Ironwoods Troy, LLC v Optigolf Troy, LLC, 204 AD3d 1130, 1131 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; accord LaPenna Contr., Ltd. v Mullen, 187 AD3d 1451, 1453 [3d Dept 2020]). "[I]t is well settled that a contractual agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Ampower-US, LLC v WEG Transformers USA, LLC, 214 AD3d 1129, 1131 [3d Dept 2023] [internal quotation marks and citations omitted]; accord EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d at 1722).
As the proponents of the summary judgment motion, defendants [*2]met their burden of making a prima facia showing of entitlement to judgment as a matter of law through their tender of the employment agreement, deposition testimony, executive committee meeting minutes, letter of termination dated July 31, 2019 and the affidavit of SPHPMA's president. Section IX.B.1, entitled "[t]ermination for [c]onvenience[ ]," sets forth that "[t]he [a]greement may be terminated for any or no reason by either party on at least 180 days' prior written notice. Provided, however, neither party may effect termination of the [a]greement under this provision before the first anniversary of the [c]ommencement [d]ate." SPHPMA's president averred that she met with plaintiff on July 31, 2019, advised plaintiff that his employment was being terminated without cause pursuant to the termination for convenience clause set forth in section IX of the employment agreement, and gave him the termination letter reading "[t]his letter serves as notice that [SPHPMA] is terminating its employment agreement with you, . . . in accordance with the terms of [s]ection IX.B.1. Your last day of employment will be January 27, 2020." SPHPMA's president further testified that plaintiff received full pay and benefits through January 27, 2020. In accordance with the plain meaning of the employment agreement's terms, "both parties had the unfettered right to terminate the contract pursuant to a termination of convenience clause requiring only [180] days' written notice" (Abacus v Datagence, Inc., 66 AD3d 552, 553 [1st Dept 2009] [internal quotation marks omitted]; see Elsaeidy v Guarino, 2 AD3d 486, 486-487 [2d Dept 2003]). Inasmuch as defendants have established prima facia entitlement to summary judgment, the burden shifted to plaintiff to identify a remaining triable issue of fact (see Daire v Sterling Ins. Co., 204 AD3d 1189, 1191 [3d Dept 2022]).
At oral argument, plaintiff asserted that the agreement was not enforced as written and did not meet his expectations because he was not allowed to provide medical services to patients during the six-month period. "[T]he terms of a written agreement define the rights and obligations of the parties to the agreement" (Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1, 9 [1997]. "[A] breach thereof is material if it is so substantial that it defeats the object of the parties in making the contract" (Matter of Ongweoweh Corp., 130 AD3d 1291, 1292 [3d Dept 2015] [internal quotation marks and citations omitted]). "We have long held that the fundamental objective when interpreting a written contract is to determine the intention of the parties as derived from the language employed in the contract" (Abiele Contr. v New York City School Constr. Auth., 91 NY2d at 9 [citation omitted]).
Under the terms of this agreement, the parties have a mutual absolute right to terminate the agreement for convenience. The attendant obligation is imposed upon the entity providing notice. Where the employer provides notice, the [*3]employer is obligated to provide the employee with six months of remuneration. Where the employee provides notice, the employee is required to provide six months of services. Therefore, where the employer provides notice, the six-month period allows the employee to seek other employment or make other arrangements while continuing to receive income and benefits. Likewise, where the employee provides notice, he or she must continue to provide services during the six-month period allowing the employer to seek a substitute employee. Contrary to plaintiff's subjective belief, the agreement was enforced as written, as he received prior written notice, an opportunity to seek other employment or arrangements, and receive recompense while doing so. We are unpersuaded by his assertion that gratuitous severance was substituted in for notice. Notice was given and remuneration was paid to plaintiff throughout the contractual notice period.
Plaintiff next contends that he was actually terminated for cause and was not allowed to defend himself under the pretext that the termination was for convenience. Contrary to plaintiff's contention, where the agreement provides for termination for convenience "for any or no reason" simply by providing 180 days' prior written notice of termination, he is not entitled to "court inquiry as to whether the termination was driven by an ulterior motive" (Tycoon Constr. Corp. v New York City Hous. Auth., 213 AD3d 540, 540 [1st Dept 2023]; see Baldo v Patton, 65 AD3d 765, 766-767 [3d Dept 2009]; Elsaeidy v Guarino, 2 AD3d at 486-487). As termination for convenience was expressly authorized by the agreement, plaintiff's termination does not constitute an actionable breach. Moreover, "a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017] [internal quotation marks and citation omitted]). Requiring an employer to provide an employee with a reason and an opportunity to dispute and defend himself or herself upon a termination for convenience would render meaningless paragraph IX.B.3 of the employment agreement, labeled termination by employer, which requires a specific reason for termination and an attendant procedure to cure (see Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003]; Matter of Olszewski v Cannon Point Assn., Inc., 148 AD3d 1306, 1309 [3d Dept 2017]). It is axiomatic that the consideration for terminating the agreement for convenience is that the physician will receive six months recompense and, again, plaintiff acknowledges receipt of payment.
Plaintiff asserts that he was terminated immediately, as he was not allowed to return to work or provide services to his patients, rendering the payments severance rather than remuneration. This argument lacks merit as the agreement contains no express provision [*4]requiring or guaranteeing that plaintiff remain on premises providing services to his patients from the date he received notice to his termination (see Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 221 AD3d 1324, 1330 [3d Dept 2023]), and "[c]ourts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreement[ ]" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d at 581; see Matter of Olszewski v Cannon Point Assn., Inc., 148 AD3d at 1309).As to plaintiff's assertion that the payments were severance, reading the agreement as a whole, paragraph III.C sets forth that a "physician is not eligible for severance."
Plaintiff additionally contends that the employment agreement may not extinguish the procedures contained in the bylaws and partnership agreement entitling him, as a physician who is being terminated, with an opportunity to rebut the allegations against him. "In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together" (Mayo v Royal Ins. Co. of Am., 242 AD2d 944, 944 [4th Dept 1997] [internal quotation marks and citations omitted], lv dismissed 91 NY2d 887 [1998]). Incorporation of these documents is not warranted based on the "conspicuous disclaiming language" (Lobosco v New York Tel. Co./NYNEX, 96 NY2d 312, 317 [2001]) contained in paragraph III.C in the agreement that states "[t]ermination of this agreement shall not entitle [p]hysician to a hearing and appeal rights set forth in the medical staff bylaws of any SPHP related organization." Moreover, bylaws are not a contract entitling one to damages unless the bylaws clearly delineate such right (see Mason v Central Suffolk Hosp., 3 NY3d 343, 349 [2004]). Here, the bylaws do not do so.
As to incorporation of the partnership agreement, the employment agreement specifically references policies of SPHPMA and SPHP in paragraph IX.B.3.b, entitled termination by employer. This paragraph permits immediate termination for, among other things, "[a]ny material violation by [p]hysician of a policy of either the [e]mployer or SPHP, including, but not limited to, the [c]ode of [c]onduct, if such violation would give rise to a 'for cause' (not 'at will') termination of an employee under the provisions of such policy or the [e]mployer's human resources policies." Where an agreement references an extraneous writing, it will be considered part of that agreement "only for the purpose specified" (Auburn Custom Millwork, Inc. v Schmidt & Schmidt, Inc., 148 AD3d 1527, 1530 [4th Dept 2017] [internal quotation marks and citation omitted]). Thus, the incorporation of these extraneous documents will be limited to this [*5]type of termination — for cause by the employer — only. Inasmuch as the law does not support plaintiff's arguments, and he did not raise a material issue of fact, Supreme Court properly granted summary judgment to defendants (see Daire v Sterling Ins. Co., 204 AD3d at 1192). We have examined plaintiff's remaining contentions and find them to be without merit.
Aarons, J.P., Pritzker, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.