# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**64**

**CA 16-00907**

PRESENT: WHALEN, P.J., SMITH, PERADOTTO, DEJOSEPH, AND CURRAN, JJ.

---

AUBURN CUSTOM MILLWORK, INC.,
PLAINTIFF-RESPONDENT-APPELLANT,

V                                          MEMORANDUM AND ORDER

SCHMIDT & SCHMIDT, INC.,
DEFENDANT-APPELLANT-RESPONDENT.

---

FOX & KOWALEWSKI, LLP, CLIFTON PARK (LAURENCE I. FOX OF COUNSEL), FOR
DEFENDANT-APPELLANT-RESPONDENT.

SHEATS & BAILEY, PLLC, BREWERTON (JASON B. BAILEY OF COUNSEL), FOR
PLAINTIFF-RESPONDENT-APPELLANT.

---

Appeal and cross appeal from an order of the Supreme Court,
Cayuga County (Matthew A. Rosenbaum, J.), entered February 25, 2016.
The order, among other things, denied in part plaintiff's motion for
summary judgment and denied defendant's cross motion for summary
judgment.

It is hereby ORDERED that the order so appealed from is
unanimously modified on the law by denying plaintiff's motion in its
entirety and vacating the award of damages, and as modified the order
is affirmed without costs.

Memorandum:  Defendant, a general contractor, entered into a
contract with the Town of Charlton (Town) in August 2006 for the
construction of a town hall building.  The architect hired by the Town
prepared detailed specifications for the project.  Plaintiff, a
manufacturer of architectural millwork, submitted a quote to defendant
for the fabrication and delivery of custom millwork for the project.
Defendant's president, Walter Schmidt, issued an initial purchase
order agreeing to the quoted price and setting forth certain
conditions, including the requirement that plaintiff forward
"submittals" of its product data and shop drawings.  Upon the request
of plaintiff's owner and president, Christopher J. Colella, Schmidt
subsequently issued a revised purchase order that removed a condition
of the agreement that had purported to make the purchase order itself
pending architect approval of the submittals, and replaced that
condition with a different requirement.  Plaintiff produced and
delivered certain millwork, and then sent a first invoice to defendant
in June 2007, which defendant paid.  Plaintiff also produced and
shipped custom millwork identified in a second invoice, which was
issued in August 2007.  In the meantime, apparently as a result of

contentious relations between defendant and the Town and its architect, including difficulties in obtaining approved submittals, the Town terminated defendant's contract for cause in September 2007. Defendant's surety was called upon to facilitate completion of the project pursuant to defendant's public improvement performance bond. Thereafter, plaintiff's then-manager of accounts payable and receivable followed up with Schmidt by email in early October 2007 about the second invoice being unpaid and the fact that plaintiff had other completed material stored at its facility ready for the project. Schmidt replied the following day, requesting that plaintiff forward an itemized bill reflecting materials delivered and costs incurred to date for review by the bonding company. Plaintiff subsequently sent defendant a third invoice in October 2007. The remaining millwork identified in the third invoice was stored at plaintiff's offices pending defendant's request that it be shipped to the project.

Plaintiff subsequently commenced this action for breach of contract, unjust enrichment and an account stated, seeking to recover the amount of the unpaid second and third invoices plus interest and attorneys' fees. Supreme Court, among other things, granted that part of plaintiff's motion for summary judgment on the breach of contract cause of action and awarded plaintiff damages, denied that part of plaintiff's motion seeking summary judgment on the account stated cause of action, and denied defendant's cross motion for summary judgment dismissing the complaint. Defendant appeals, and plaintiff cross-appeals.

On its appeal, defendant contends that the court erred in granting plaintiff's motion in part inasmuch as there are triable issues of fact with respect to the breach of contract cause of action. We agree. "It is well settled that the elements of a breach of contract cause of action are 'the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages' " (*Niagara Foods, Inc. v Ferguson Elec. Serv. Co., Inc.*, 111 AD3d 1374, 1376, *lv denied* 22 NY3d 864). It is undisputed that the revised purchase order constituted the contract between the parties. The parties dispute, however, whether the revised purchase order required that plaintiff comply with the procedure for obtaining architect approval of its submittals as set forth in the specifications and, if so, whether plaintiff performed its contractual obligations.

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569). "Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous" (*South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 278; *see Greenfield*, 98 NY2d at 569). "The proper inquiry in determining whether a contract is ambiguous is whether the agreement on its face is reasonably susceptible of more than one interpretation[,] . . . [and a] party seeking summary judgment has the burden of establishing that the construction it favors is the only construction which can

fairly be placed thereon" (*Kibler v Gillard Constr., Inc.*, 53 AD3d 1040, 1042 [internal quotation marks omitted]).

Here, plaintiff failed to meet that burden. In relevant part, the initial purchase order issued by defendant following plaintiff's quote required as the first condition that "Submittals . . . include (6) copies" of "Product Data" and "Shop Drawings"; specified in the second condition that the purchase order would be "pending architect approved submittals"; and requested in the sixth condition that submittals be forwarded at plaintiff's first opportunity. Plaintiff thereafter requested a change to the language on the ground that the purchase order itself could not be made contingent on the architect's approval of submittals because the parties would be under a binding agreement once plaintiff started shop drawings. In response, defendant issued the revised purchase order that retained the other conditions, but replaced the challenged language in the second condition with the requirement that "[a]ll work . . . comply with drawings and specifications." Thus, on its face, the revised purchase order contemplated that plaintiff, as part of its contractual obligations, would be required to forward submittals; however, it did not provide any definite or precise language regarding the nature of the submittal procedure or the requirements thereof.

Plaintiff contends that the only fair construction of the contract is that it merely required that plaintiff's work product comply with the specifications, but did not require plaintiff's compliance with the administrative procedures contained therein, i.e., formal architect approval. We conclude, however, that the contract terms are ambiguous because there is a reasonable basis for a difference of opinion whether the revised purchase order, which required that plaintiff make submittals that included its shop drawings, also required that plaintiff comply with the requirements for obtaining architect approval of that work as set forth more fully in the specifications referenced in the second condition of the revised purchase order (*see generally Greenfield*, 98 NY2d at 570-571). We further conclude that the contractual terms, coupled with the extrinsic evidence of the parties' intent—which included Colella's deposition testimony indicating plaintiff's possession of the specifications and understanding of their requirements, Colella's assurance to Schmidt that plaintiff would go through the submittal procedure to obtain architect approval, and the parties' discussion of plaintiff's compliance with the submittal procedure during performance of the contract—establish that the revised purchase order required that plaintiff obtain approved shop drawings from the architect in accordance with the specifications.

Plaintiff nonetheless contends that the architect approval requirement of the submittal procedure contained in the specifications of the prime contract between defendant and the Town cannot be incorporated into the revised purchase order, and thus cannot be binding upon it. We reject that contention. " '[A] reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified' " (*Hayward Baker, Inc. v C.O. Falter Constr. Corp.*, 104 AD3d 1253,

1254).  Thus, "[u]nder New York law, incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind a subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor" (*Bussanich v 310 E. 55th St. Tenants*, 282 AD2d 243, 244).  Contrary to plaintiff's contention, we conclude that the architect approval provisions of the specifications related to the scope, quality, character and manner of plaintiff's millwork inasmuch as compliance with those provisions was the method by which the parties ensured that the quality and character of the work met the requirements of the project.

Having established that the revised purchase order required that plaintiff obtain architect approval through the submittal procedure, defendant contends that summary judgment on the breach of contract cause of action is inappropriate because there is a triable issue of fact whether plaintiff fulfilled its contractual obligations.  We agree.  Plaintiff's own submissions, which included both Colella's affidavit indicating that plaintiff had produced "approved" millwork and Schmidt's deposition testimony to the contrary, raised triable issues of fact regarding whether it had performed in compliance with the contract (*see Micro-Link, LLC v Town of Amherst*, 109 AD3d 1130, 1131; *Andrews, Pusateri, Brandt, Shoemaker & Roberson, P.C. v County of Niagara*, 91 AD3d 1287, 1287-1288; *Schenectady Air Sys. v Campito Plumbing & Heating*, 84 AD2d 863, 864).  Even assuming, arguendo, that plaintiff met its initial burden, we conclude that defendant raised a triable issue of fact in opposition to plaintiff's motion by submitting Schmidt's affidavit and his email exchange with one of plaintiff's representatives.  Those submissions indicated, among other things, that plaintiff had failed to obtain submittals with the requisite architect approval and that, consequently, the architect had refused to recommend payment and the Town refused to pay defendant for the material furnished by plaintiff (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).

Nonetheless, relying primarily upon defendant's submissions in opposition, plaintiff contends, in essence, that the record establishes that defendant waived the contractual requirement that the millwork be approved pursuant to the specifications because plaintiff had obtained verbal approval from the project architect to which defendant failed to object.  We reject that contention.  Although "[c]ontractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned," and "[s]uch abandonment 'may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage,' " a waiver " 'should not be lightly presumed' and must be based on 'a clear manifestation of intent' to relinquish a contractual protection" (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104).  "Generally, the existence of an intent to forgo such a right is a question of fact" (*id.*).

Here, we conclude that the submissions—including Schmidt's deposition testimony regarding the apprehensions he expressed to

plaintiff about proceeding without architect approval, the email exchange with plaintiff's representative regarding plaintiff's failure to obtain such approvals, and Schmidt's affidavit regarding his hope that plaintiff would comply despite defendant's payment of the first invoice and his admonishment to plaintiff that the architect would not authorize payment for materials that it was treating as nonconforming and unacceptable for the project—do not demonstrate, as a matter of law, that defendant and its architect intended to waive the formal, written architect approval requirement of the contract (*see G. De Vincentis & Son Constr. v City of Oneonta*, 304 AD2d 1006, 1008-1009; *Engineered Air, Div. of Thermal Components v LeCesse Bros. Contr.*, 149 AD2d 951, 951; *cf. McFadyen Consulting Group, Inc. v Puritan's Pride, Inc.*, 87 AD3d 620, 621-622). We similarly conclude that, contrary to plaintiff's contention, it failed to eliminate all triable issues of fact with respect to defendant's alleged liability pursuant to provisions of the Uniform Commercial Code (*see generally Hooper Handling v Jonmark Corp.*, 267 AD2d 1075, 1075-1076).

Although plaintiff submitted evidence that defendant sought and may have recovered some portion of the value of plaintiff's millwork in defendant's separate lawsuit against the Town, the record evidence in that regard does not entitle plaintiff to summary judgment as a matter of law on the breach of contract cause of action. We note that there was a postverdict lump sum settlement in that lawsuit; thus, the evidence submitted by plaintiff indicating that the jury awarded defendant the sum of the first and second invoices provides only limited proof that defendant is in possession of funds rightfully belonging to plaintiff and such proof, in any event, would be relevant to the unjust enrichment cause of action that was not the subject of the motions below and is not addressed on appeal (*see generally Hayward Baker, Inc.*, 104 AD3d at 1255). In addition, to the extent that the evidence from defendant's lawsuit against the Town supports the proposition that defendant considered plaintiff's millwork compliant, that evidence merely raises an issue of fact in view of the conflicting evidence in the record (*see generally Zuckerman*, 49 NY2d at 562). We thus conclude that the court erred in granting that part of plaintiff's motion for summary judgment on the breach of contract cause of action and awarding plaintiff damages, and we modify the order accordingly.

On its cross appeal, plaintiff contends that the court erred in denying that part of its motion for summary judgment on the account stated cause of action. We reject that contention. " 'An account stated represents an agreement between the parties reflecting an amount due on a prior transaction . . . An essential element of an account stated is an agreement with respect to the amount of the balance due' " (*Seneca Pipe & Paving Co., Inc. v South Seneca Cent. Sch. Dist.*, 83 AD3d 1540, 1541; *see Micro-Link, LLC*, 109 AD3d at 1131). "[W]hile the mere silence and failure to object to an account stated cannot be construed as an agreement to the correctness of the account, the factual situation attending the particular transactions may be such that, in the absence of an objection made within a reasonable time, an implied account stated may be found" (*Interman*

*Indus. Prods. v R. S. M. Electron Power*, 37 NY2d 151, 154; *see Schwerzmann & Wise, P.C. v Town of Hounsfield* [appeal No. 2], 126 AD3d 1483, 1484). " 'Whether a bill has been held without objection for a period of time sufficient to give rise to an inference of assent, in light of all the circumstances presented, is ordinarily a question of fact, and becomes a question of law only in those cases where only one inference is rationally possible' " (*Schwerzmann & Wise, P.C.*, 126 AD3d at 1484).

Here, we conclude that plaintiff met its initial burden by establishing that it contracted with defendant to provide millwork for the project, that the relevant invoices were sent to and received by defendant, and that defendant neither paid the second and third invoices nor objected to them (*see Chianis & Anderson Architects, PLLC v Courterback Dev. Co., LLC*, 140 AD3d 1286, 1288, *lv denied in part and dismissed in part* 28 NY3d 1021). However, viewing the evidence in the light most favorable to defendant as the nonmoving party (*see generally Esposito v Wright*, 28 AD3d 1142, 1143), we conclude that defendant's submissions are sufficient to raise an issue of fact. In particular, Schmidt's affidavit raises an issue of fact whether there was a dispute between the parties regarding plaintiff's compliance with the contract that would preclude payment of the balance owed under the second and third invoices, i.e., a dispute over the amounts due (*see generally Chianis & Anderson Architects, PLLC*, 140 AD3d at 1288-1289; *Micro-Link, LLC*, 109 AD3d at 1131; *Construction & Mar. Equip. Co. v Crimmins Contr. Co.*, 195 AD2d 535, 535). While bald, self-serving assertions of oral objections are insufficient to raise an issue of fact (*see Darby & Darby v VSI Intl.*, 95 NY2d 308, 315), Schmidt's affidavit was corroborated, at least in part, by contemporaneous documentation in the form of the email exchange in which he expressed to plaintiff's representative that plaintiff had not obtained approved submittals for any work that it had been providing (*see generally Chianis & Anderson Architects, PLLC*, 140 AD3d at 1289). Moreover, while Schmidt may not have specifically recalled objecting to or approving the second and third invoices, we conclude that acquiescence to the account on those invoices cannot be implied from that silence given the plausible explanation that no payment would be made on fabricated millwork that lacked shop drawings approved by the architect, and that fact was or should have been evident to plaintiff (*see id.*). We thus conclude that the record does not establish that the only rational inference to be drawn from defendant's retention of the second and third invoices was its agreement to pay them (*see generally Schwerzmann & Wise, P.C.*, 126 AD3d at 1484-1485).

In light of our determination, we do not address plaintiff's remaining contention on its cross appeal.

Entered:  March 24, 2017                          Frances E. Cafarell
                                                  Clerk of the Court