Founders Pavilion, Inc. v Pavilion Operations, LLC (2021 NY Slip Op 01657)





Founders Pavilion, Inc. v Pavilion Operations, LLC


2021 NY Slip Op 01657


Decided on March 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND DEJOSEPH, JJ.


1009 CA 20-00498

[*1]FOUNDERS PAVILION, INC., PLAINTIFF-RESPONDENT,
v
PAVILION OPERATIONS, LLC, DEFENDANT-APPELLANT. 






HINMAN, HOWARD & KATTELL, LLP, BINGHAMTON (AMY SHAPIRO OF COUNSEL), FOR DEFENDANT-APPELLANT.
HARRIS BEACH PLLC, PITTSFORD (JAMES P. NONKES OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order and judgment (one paper) of the Supreme Court, Steuben County (Robert B. Wiggins, A.J.), entered November 18, 2019. The order and judgment, among other things, granted in part plaintiff's motion for summary judgment. 
It is hereby ORDERED that the order and judgment so appealed from is unanimously modified on the law by denying those parts of plaintiff's motion seeking summary judgment on its first and second causes of action with respect to liability for the amount owed as a result of the audit performed by the Office of the Medicaid Inspector General and the release and allocation of the escrow funds and vacating the declaration with respect to the release and allocation of the escrow funds, and as modified the order and judgment is affirmed without costs.
Memorandum: This appeal arises from plaintiff's sale of a skilled nursing facility (facility) to defendant pursuant to an asset purchase agreement (APA) in which the parties detailed which assets and liabilities of the facility would be retained by plaintiff or be transferred to defendant. The APA stated that plaintiff would retain certain "excluded assets," including funds received post-sale as a result of Medicaid rate appeals arising from services rendered prior to the effective date of the APA. After the APA's effective date, the State of New York entered into a universal settlement agreement with various skilled nursing facilities, including the facility at issue in this case. The universal settlement agreement was executed at a time when the State was transitioning to a new Medicare reimbursement methodology, and provided that "the State desires, in exchange for the cessation of the Facilities' pending rate appeals and pending litigation that dispute or contest all aspects of the prior reimbursement methodology . . . to settle any claims or counterclaims it may have against the Facilities relating to the prior reimbursement methodology . . . and to pay to the Facilities' current and former owners, as appropriate, $850 million . . . as such sum is allocated among the Nursing Home Facilities themselves." From that sum of $850 million, the universal settlement agreement allocated over $644,000 to the facility.
The APA further provided that liability for "all overpayment or audit liabilities" would be retained by the party who provided the services resulting in the overpayment "unless such overpayments or audit liabilities result[ed] from . . . [the] acts or omissions" of the other party. Following the sale of the facility to defendant, the Office of the Medicaid Inspector General (OMIG) concluded its audit of the facility and found that the facility had been overpaid approximately $165,000 for services rendered during both plaintiff's and defendant's operation of the facility. Because the OMIG audit had been ongoing at the time of the sale, plaintiff had placed $1,000,000 of the purchase price into an escrow account. At the conclusion of the audit, the amount plaintiff owed as a result of the OMIG audit would be withdrawn to offset any audit liability attributable to plaintiff.
Plaintiff commenced this action seeking a declaration that, inter alia, plaintiff is entitled to all of the funds received pursuant to the universal settlement agreement, and is entitled to the [*2]funds in the escrow account, minus approximately $55,000 that plaintiff concedes it owes as a result of the OMIG audit. Plaintiff also asserted causes of action for breach of contract and breach of implied duty of good faith and fair dealing. Defendant answered and asserted affirmative defenses and counterclaims. Defendant alleged, inter alia, that plaintiff is liable for the entire amount owed as a result of the OMIG audit and that the funds received pursuant to the universal settlement agreement belong to defendant.
Plaintiff moved for summary judgment, seeking the relief requested in the complaint and dismissal of defendant's affirmative defenses and counterclaims. Defendant cross-moved for summary judgment, seeking, inter alia, release of approximately $165,000 from the escrow on the ground that plaintiff is liable for the full amount owed as a result of the OMIG audit, and a declaration that defendant is the rightful owner of the full amount obtained under the universal settlement agreement. Supreme Court, inter alia, granted those parts of plaintiff's motion seeking summary judgment on its first cause of action, for a declaratory judgment, and second cause of action, for breach of contract, and denied defendant's cross motion. Defendant appeals.
Contrary to defendant's contention, the court properly granted that part of plaintiff's motion seeking a determination that plaintiff is entitled to the entire amount received under the universal settlement agreement. " '[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms' " (Auburn Custom Millwork, Inc. v Schmidt & Schmidt, Inc., 148 AD3d 1527, 1529 [4th Dept 2017]; see Skanska USA Bldg. Inc. v Atlantic Yards B2 Owner, LLC, 31 NY3d 1002, 1006 [2018], rearg denied 31 NY3d 1141 [2018]). " 'Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous' " (Auburn Custom Millwork, Inc., 148 AD3d at 1529; see generally Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d 1080, 1082 [2019]; Maven Tech., LLC v Vasile, 147 AD3d 1377, 1378 [4th Dept 2017]). "An agreement is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014] [internal quotation marks omitted]). "[A] party seeking summary judgment has the burden of establishing that the construction it favors is the only construction which can fairly be placed thereon" (Auburn Custom Millwork, Inc., 148 AD3d at 1529 [internal quotation marks omitted]).
Here, the universal settlement agreement, by its terms, provided that the entire $850 million in settlement funds, a portion of which was received by the facility, was allocated "in exchange for the cessation of" pending rate appeals, litigation, claims, and counterclaims arising from the State's prior reimbursement methodology. It is undisputed that the only relevant pending rate appeals regarding the prior reimbursement methodology had been filed by plaintiff, that those appeals arose from services provided by plaintiff during the period when it owned the facility, and that the APA stated that plaintiff was entitled to those sums that, although received after the sale, arose "from services rendered before the effective date" of the APA. In light of the above, we conclude that the universal settlement agreement unambiguously provides that the entire amount of funds received by the facility thereunder was allocated in exchange for the cessation of rate appeals filed by plaintiff for services rendered by plaintiff (see generally Matter of Shore Winds, LLC v Zucker, 179 AD3d 1208, 1210 [3d Dept 2020], lv denied 35 NY3d 914 [2020]), and that the unambiguous terms of the APA provide that plaintiff is entitled to all such funds.
We agree with defendant, however, that the court erred in granting plaintiff's motion with respect to the release and allocation of the escrow funds inasmuch as there is a question of fact regarding the extent of plaintiff's liability for the amount of overpayment determined by the OMIG audit, and we therefore modify the order and judgment accordingly. Although it is undisputed that the amount of the overpayments, minus the portion for which plaintiff concedes it is liable, pertains to services provided by defendant, there is a question of fact with respect to whether the liability for such overpayments nevertheless resulted from plaintiff's "acts or omissions," thus rendering plaintiff liable for the entire audit amount. Specifically, defendant contends that the overpayments were the result of plaintiff's pre-sale submission of cost reports that resulted in an inflated Medicaid reimbursement rate for services thereafter provided by defendant. The APA provides that a party is liable for overpayments caused by its own acts or omissions, but it does not, however, define what constitutes an "act or omission" under the [*3]relevant clause. Under the circumstances of this case, we conclude that those terms do not "ha[ve] a definite and precise meaning" and that there is a "reasonable basis for a difference of opinion" (Ellington, 24 NY3d at 244 [internal quotation marks omitted]) with respect to whether the submission of erroneous cost reports constitutes an "act or omission" as contemplated by the APA, and that the clause is therefore ambiguous (see Ames v County of Monroe, 162 AD3d 1724, 1726-1727 [4th Dept 2018]). Because that clause of the APA is ambiguous, we may look to extrinsic evidence (see id. at 1726). Nevertheless, although the parties submitted extrinsic evidence, neither party met its respective initial burden on its motion or cross motion "of establishing that the construction it favors is the only construction which can fairly be placed thereon" (Auburn Custom Millwork, Inc., 148 AD3d at 1529 [internal quotation marks omitted]; see Romilly v RMF Prods., LLC, 106 AD3d 1465, 1466 [4th Dept 2013]; Morales v Asarese Matters Community Ctr. [appeal No. 2], 103 AD3d 1262, 1264 [4th Dept 2013], lv dismissed 21 NY3d 1033 [2013]; Kibler v Gillard Constr., Inc., 53 AD3d 1040, 1042 [4th Dept 2008]). Thus, we conclude that the court properly denied defendant's cross motion for summary judgment with respect to the issue of liability for the amount owed as a result of the OMIG audit, and that the court erred in granting plaintiff's motion with respect to that issue. In reaching that conclusion, we reject plaintiff's contention that section 8.19 of the APA bars defendant's contention that plaintiff is liable for the entire amount owed as a result of the OMIG audit.
Entered: March 19, 2021
Mark W. Bennett
Clerk of the Court