# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  May 5, 2016                      521606
_____

WFE VENTURES, INC.,
                    Appellant,

          v                                MEMORANDUM AND ORDER

FREDERICK A. MILLS et al.,
                    Respondents.
_____

Calendar Date:   March 21, 2016

Before:   Garry, J.P., Egan Jr., Lynch, Devine and Clark, JJ.

                         _____


          Flink Smith Law LLC, Albany (Jay A. Smith of counsel), for
appellant.

          Phillips Lytle LLP, Buffalo (Ryan A. Lema of counsel), for
respondents.

                         _____


Egan Jr., J.

          Appeal from an order of the Supreme Court (Buchanan, J.),
entered December 5, 2014 in Essex County, which granted
defendants' motion to set aside the verdict and dismissed the
complaint.

          At all times relevant, defendants were the owners of
approximately 110 acres of land located in the Town of North
Elba, Essex County.  In late 2005 or early 2006, defendants
placed an advertisement in a local newspaper indicating that the
property was for sale.  Following an initial investigation into
the parcel, plaintiff — through its president, Peter Coffrin —
contacted defendant Frederick A. Mills to discuss purchasing the
property.  Mills advised Coffrin that the property contained 22
lots — two of which Mills intended to retain for personal use,

leaving approximately 101 acres (and what was anticipated to be 20 building lots) available for sale. After defendants obtained the required subdivision permit from the Adirondack Park Agency (hereinafter APA), plaintiff and defendants entered into an option agreement on May 31, 2006, pursuant to the terms of which plaintiff was granted an exclusive one-year option to purchase the property.[1] The purchase price — as per the attached (and unexecuted) contract of sale — was set at $2 million. The option agreement was set to expire on May 31, 2007. In the event that plaintiff failed to exercise its option prior to the expiration of the agreement, defendants were permitted to retain the $200,000 initially paid by plaintiff as consideration in connection therewith.

Shortly after paying defendants the moneys required under the option agreement, plaintiff submitted an application to the APA seeking to further subdivide the 101 acres into the desired 20 residential building lots. According to Coffrin, after examining the property more closely and taking into consideration the parcel's topography and wetlands, plaintiff and the APA collectively concluded that 17 building lots "would be a better number." Although Coffrin acknowledged that the proposed project could still go forward with 17 lots, he further indicated that plaintiff needed 20 lots "in order for [the] financial analysis to work" and, with fewer lots, the project would be less profitable. To that end, in late April 2007, Coffrin contacted Mills and attempted to renegotiate the parties' agreement.[2] Those efforts failed and, in June 2007, defendants entered into a contract to sell the property to a third party for $1.85 million.

---

[1]  This initial subdivision permit allowed defendants to create three parcels out of the approximately 110 acres at issue — the 101-acre parcel upon which plaintiff held the option to purchase and the two five-acre parcels retained by defendants.

[2]  Although Coffrin couched these negotiations in terms of merely amending and/or seeking an extension of the original option agreement, the record reflects that such discussions actually amounted to a wholesale renegotiation of the underlying purchase and sale agreement.

Plaintiff thereafter commenced this action setting forth six causes of action sounding in breach of contract, fraud in the inducement, unjust enrichment and tortious interference with contract. Defendants answered – raising various affirmative defenses and counterclaims – and thereafter moved for summary judgment dismissing the complaint. Supreme Court granted defendants' motion as to the unjust enrichment claim and denied the balance of the requested relief. The matter proceeded to trial and, at the close of proof, Supreme Court dismissed plaintiff's fraud cause of action.[3] The jury thereafter returned a verdict in favor of plaintiff, finding that defendants agreed to extend plaintiff's option to purchase the property, and awarded plaintiff $200,000 in damages. A judgment to that effect was entered in June 2014.

Defendants subsequently moved to set aside the verdict alleging, among other things, that the purported oral agreement to extend plaintiff's option to purchase was unenforceable and violated the statute of frauds and that the verdict was against the weight of the evidence. In November 2014, Supreme Court granted defendants' motion, finding, among other things, that there was insufficient evidence to establish that the parties orally agreed to modify/extend the option agreement. Having so concluded, Supreme Court did not address the statute of frauds issue. Supreme Court's resulting order was entered on December 5, 2014 and a judgment to that effect was entered on February 10, 2015. Plaintiff now appeals from Supreme Court's December 2014 order granting defendants' motion to set aside the verdict.

Initially, we reject defendants' assertion that this appeal is not properly before us. While it is true that "[t]he right to appeal from a nonfinal order terminates upon the entry of a final judgment" (Matter of County of Nassau v State of New York, 100 AD3d 1052, 1056 [2012] [internal quotation marks and citation omitted], lv dismissed and denied 20 NY3d 1092 [2013]), the order

---

[3] While not entirely clear from the record, it appears that plaintiff's tortious interference with contract claim was withdrawn or dismissed prior to trial, as only plaintiff's breach of contract claims were submitted to the jury for consideration.

appealed from is a final order and, therefore, "the right of direct appeal did not terminate upon entry of the judgment[]" (Aaron v Pattison, Sampson, Ginsburg & Griffin, P.C., 69 AD3d 1084, 1085 n 4 [2010]).

"A jury verdict may be set aside as against the weight of the evidence only when the evidence preponderates so greatly in the movant's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence" (Matter of State of New York v James Z., 97 AD3d 1046, 1047 [2012] [internal quotation marks, brackets and citations omitted], lv denied 20 NY3d 853 [2012]; see Revell v Guido, 124 AD3d 1006, 1010 [2015]). Based upon our review of the record as a whole, we are satisfied that this standard was met here. "The essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach. To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. A court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to. Accordingly, if an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" (Carione v Hickey, 133 AD3d 811, 811 [2015] [internal quotation marks, brackets and citations omitted]).

There is no dispute that the option agreement expired on May 31, 2007 without plaintiff exercising its rights thereunder. Indeed, Coffrin candidly testified that plaintiff allowed the option agreement to expire because it "wanted a reduction of the sales price and an extension o[f] the option terms." As to the issue of whether the parties ever reached an agreement in this regard, Coffrin detailed plaintiff's efforts to renegotiate the parties' deal, and the record contains a series of proposals — beginning in April 2007 — that were transmitted back and forth between Coffrin and Mills. Although Coffrin testified that he and Mills "were essentially in agreement on an extension," the record is — as Supreme Court aptly observed — devoid of proof that defendants ever actually agreed (either orally or in writing) to extend the option agreement or otherwise modify the

terms of the option agreement or the related purchase and sale contract.  Indeed, while Mills acknowledged he and Coffrin were "try[ing] to work something out," he repeatedly testified that there was no "meeting of the minds" as to any of the essential terms – including the sale price and financing options – and that they "never had a deal."  Mills' testimony in this regard is substantiated by the various proposals themselves, which reveal an evolving series of suggested prices, terms and option expiration dates.  As the record fails to establish that the parties successfully and definitively resolved these and other material issues, the jury's finding – that defendants agreed to extend plaintiff's option to purchase the property – cannot stand, and Supreme Court properly granted defendants' motion to set aside the verdict upon this ground.

With respect to the balance of plaintiff's appeal, plaintiff's alternative theory of implied contract was not raised at the trial level and, therefore, is not properly before us (see e.g. Albany Eng'g Corp. v Hudson River/Black Riv. Regulating Dist., 110 AD3d 1220, 1222 [2013]).  Additionally, having concluded that there was no oral extension of the option agreement in the first instance, we need not consider whether any such agreement would – as plaintiffs contend – fall within an exception to the statute of frauds (see Spier v Southgate Owners Corp., 39 AD3d 277, 278 [2007]).  Accordingly, Supreme Court's order is affirmed.

Garry, J.P., Lynch, Devine and Clark, JJ., concur.


ORDERED that the order is affirmed, with costs.



ENTER:


Robert D. Mayberger
Clerk of the Court