Adirondack Classic Design, Inc. v Farrell (2020 NY Slip Op 02298)





Adirondack Classic Design, Inc. v Farrell


2020 NY Slip Op 02298


Decided on April 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 16, 2020

527434

[*1]Adirondack Classic Design, Inc., Respondent,
v
Harry Farrell, Appellant.

Calendar Date: February 18, 2020

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Colangelo, JJ.


Hurwitz & Fine, PC, Lake Placid (Earl K. Cantwell of counsel), for appellant.
Fischer, Bessette, Muldowney & McArdle, LLP, Malone (John J. Muldowney of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (Ellis, J.), entered August 28, 2018 in Franklin County, upon a verdict rendered in favor of plaintiff.
Beginning in 2013, defendant started working with Nils Luderowski, an architect, to design a great camp for defendant's property located on Upper Saranac Lake. Luderowski presented defendant with two different project delivery methods: the design/bid/build method — in which the owner and architect develop complete design and work drawings, present them to potential contractors for bids, then select a contractor and begin building — and the fast track method — in which preliminary designs and drawings are prepared and construction begins based thereon, with the design concept developing as the construction progresses. Defendant selected the fast track method, which permitted construction to begin more quickly. In February 2014, defendant stated that his budget would be $1.1 million to obtain an enclosed structure and whatever was necessary to obtain a certificate of occupancy, not a completed house. Plaintiff indicated that this figure appeared to be a fairly accurate baseline and the costs would be honed as the design developed. The parties then entered into a contract for plaintiff to demolish the existing structure on the property and build a new camp. They signed a written contract stating that the construction would be completed for a stipulated sum, but a blank was left where the sum should be listed. The parties conceded at trial that they proceeded on a time and materials basis, rather than a stipulated sum basis. Plaintiff billed defendant twice monthly, sending invoices and billing worksheets, and defendant made regular payments. In the spring of 2015, defendant applied for and received a construction loan from a bank, which required completion to specifications, not just the minimum required for a certificate of occupancy. In September 2015, a certificate of occupancy was issued and the bank approved release of the final funds from the construction loan. The house was not complete, but the construction was much more than the minimum required for a certificate of occupancy, with many interior finishes added. Although defendant had paid approximately $1.7 million, plaintiff sent an invoice for $169,646.29 for work that had been done. Defendant refused to pay, and plaintiff ceased construction.
Plaintiff commenced this action asserting a breach of contract. Defendant asserted various counterclaims, including that plaintiff breached their contract. At trial, Supreme Court dismissed most of defendant's other counterclaims. The jury rendered a verdict in favor of plaintiff, finding that defendant breached the contract and awarding damages in the amount of $169,646.29. Defendant appeals from the judgment entered thereon.
Supreme Court properly denied defendant's motion for a directed verdict. "A trial court may grant a CPLR 4401 motion for judgment as a matter of law only when, viewing the evidence in the light most favorable to the nonmoving party and affording [it] the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmoving party" (D.Y. v Catskill Regional Med. Ctr., 156 AD3d 1003, 1005 [2017] [citations omitted]; see O'Connor v Shultz, 166 AD3d 1104, 1104 [2018]). To recover for a breach of contract, a party must establish the existence of a contract, the party's own performance under the contract, the other party's breach of its contractual obligations, and damages resulting from the breach (see Carroll v Rondout Yacht Basin, Inc., 162 AD3d 1150, 1151 [2018], appeal and lv dismissed 32 NY3d 1035 [2018]; WFE Ventures, Inc. v Mills, 139 AD3d 1157, 1160 [2016]). Plaintiff offered testimony from, among others, its co-owners, Luderowski, and Paul Carr, a construction expert, as well as emails, invoices and photographs of the construction at different stages. Viewed in a light most favorable to plaintiff, the evidence would support a finding that the parties entered into a contract, plaintiff performed by constructing a building according to the design approved by Luderowski and defendant, and defendant breached the contract by failing to pay the final invoice amount. Contrary to defendant's argument that plaintiff failed to prove that it provided "workmanlike" quality, plaintiff's evidence supports an inference that it performed in a satisfactory manner. Accordingly, the court properly denied defendant's motion for a directed verdict.
We will not disturb the jury's verdict finding that defendant breached the parties' contract but plaintiff did not. "A verdict may be set aside as against the weight of the evidence if the evidence so preponderated in favor of the [losing party] that the verdict could not have been reached on any fair interpretation of the evidence" (Kennedy v Nimons, 178 AD3d 1302, 1303 [2019] [internal quotation marks, ellipsis, brackets and citations omitted]). "It is not enough to show that a different verdict would be reasonable since the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Maksuta v Heitzman, 165 AD3d 1550, 1551 [2018] [internal quotation marks and citations omitted]).
Initially, we reject defendant's argument that the construction contract was a stipulated sum contract. Defendant selected the fast track method to allow construction to begin quickly, so plaintiff began billing on a time and materials basis — in which the contractor bills periodically for labor, materials, subcontractor costs and a mark-up for overhead. Although defendant attempts to hold plaintiff to the terms of the written construction contract, evidence demonstrated that the parties signed that document with a blank left for the fixed price, originally contemplating that they would convert the contract into a stipulated sum contract once the design development process was done, but it was never converted because no final working drawings were ever completed. At trial, the parties agreed, and defendant conceded, that this was a time and materials contract (compare Birk Iron Works v Van Tulco, Inc., 178 AD2d 137, 137-138 [1991], lv denied 79 NY2d 975 [1992]). "[B]ecause the parties had agreed to proceed on a time and materials basis," there was no fixed price and the original estimates were not determinative or binding (CIR Elec. Constr. Corp. v Black Cr. Integrated Sys. Corp., 8 AD3d 999, 1000 [2004]).
Despite a provision in the written contract requiring written change orders for any modifications from the original plan, Carr and other witnesses testified that the construction industry does not use written change orders with time and materials contracts, inasmuch as those contracts do not have definite parameters for cost or time of completion and the design elements necessarily change throughout construction as they are intended to accommodate the evolving design. In any event, "[p]rovisions requiring written authorization for extra work are waived where the conduct of the parties demonstrates an indisputable mutual departure from the written agreement and the changes were clearly requested by the owner and executed by the contractor" (Peter Scalamandre & Sons, Inc. v FC 80 Dekalb Assoc., LLC, 129 AD3d 807, 809 [2015] [internal quotation marks, brackets and citations omitted]; cf. Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster, 40 AD3d 1289, 1291 [2007]). Defendant acknowledged that he approved certain design changes that would increase the cost, such as adding a full basement, even though no official change order was executed. Thus, it was not unreasonable for the jury to conclude that the parties did not require written change orders to update the design specifications for this time and materials contract (see Weaver v Acampora, 227 AD2d 727, 728 [1996]).
Luderowski testified that, in general for fast track projects and specifically in this case, the owner made design decisions, the architect designed them and passed them along to the contractor, and the contractor built the camp accordingly. Defendant acknowledged his awareness that the $1.1 million estimate was a baseline number, not a contractual sum, and that changes in the scope of the design would affect the cost. Plaintiff's co-owners testified that, after construction began, the parties decided that including additional components, rather than the bare minimum required for a certificate of occupancy, would be more cost efficient in the long run. Several witnesses testified regarding the evolution of the project from the initial concept — a building shell with one working bathroom and plywood floors and countertops — to a building that was, in the end, a mostly-completed camp, with birch flooring, granite countertops, several completed bathrooms and four fireplaces. Additionally, when defendant obtained a construction loan, the bank would not release those funds unless the building was completed to design specifications, not just a minimum level. These changes in the scope of the project explained the increase in cost from the original rough estimate of $1.1 million to get to a certificate of occupancy (or $1.456 million for a completed camp) to a cost of nearly $2 million for a completed camp. Though defendant disputed it, emails and testimony from several witnesses indicated that plaintiff had informed defendant of the increasing costs for many months, beginning possibly as early as November 2014, and that defendant expressed no interest in curtailing the construction or scope of design but wanted to continue building. Considering that plaintiff, defendant and Luderowski were in frequent contact, that plaintiff sent defendant bimonthly invoices with billing worksheets and that defendant regularly paid them, including for amounts well beyond the $1.1 million that he now claims was the contract amount (see Ridgeline Constructors v Elmira Glass Tech. Corp., 183 AD2d 1041, 1043-1044 [1992]), the jury could reasonably conclude that defendant approved of, and the contract therefore included, all of the changes and design elements that plaintiff incorporated into the building.
Plaintiff's evidence established that plaintiff completed the work as billed to defendant. Defendant presented some evidence that plaintiff overbilled him, but this created credibility questions for the jury to resolve. Defendant also asserted that certain work was defective, but he failed to definitively prove causation. Plaintiff's co-owners and defendant all testified that defendant did not pay $169,646.29 that was billed to him for plaintiff's work on the property. Thus, giving deference to the jury's credibility determinations and interpretation of the evidence (see Maksuta v Heitzman, 165 AD3d at 1551), we cannot disturb the jury's findings that plaintiff established that the parties entered into a contract, plaintiff performed under that contract without breaching it, defendant breached by failing to pay, and plaintiff suffered damages equal to the unpaid amount.
Supreme Court properly permitted plaintiff's expert witness, Carr, to testify. Trial courts have broad discretion to control pretrial disclosure and the admission of evidence at trial (see Rivera v Montefiore Med. Ctr., 28 NY3d 999, 1002 [2016]; Colucci v Stuyvesant Plaza, Inc., 157 AD3d 1095, 1098 [2018], lv denied 31 NY3d 906 [2018]; O'Buckley v County of Chemung, 149 AD3d 1232, 1234 [2017]). Prior to the beginning of trial, Supreme Court denied both parties' motions to preclude expert testimony as untimely under court rules. The court ruled that Carr's testimony would be limited to industry standards, but defendant ignored that ruling by asking Carr questions about the specifics of this case. Contrary to defendant's argument that Carr's testimony about industry standards was irrelevant and intended to confuse the jury, his testimony explained methods such as fast track projects and time and materials basis and indicated that plaintiff was following standard practices in the industry. Defendant was not entitled to a curative instruction regarding Carr's testimony, considering that defendant opened the door to fact-specific testimony.
Supreme Court properly limited the testimony of defendant's expert witnesses. On the day — half-way through trial — that witnesses from Sootbusters LLC were supposed to testify for defendant, he announced that his expert disclosure five months earlier had incorrectly identified which witness conducted an inspection of the camp. The court noted that this act, on the day of trial, of changing what the expert would testify to would deny plaintiff a chance to prepare for cross-examination. Nevertheless, the court allowed one Sootbusters witness to testify. However, when called to the stand, that witness produced a written cost breakdown, which had been requested more than once prior to trial but was never disclosed. Although defendant asserted that the cost breakdown was created the prior night and, thus, could not have been disclosed, the court determined that the cumulative lack of disclosure and incorrect disclosure of information, despite defendant having hired Sootbusters two years earlier, required preclusion of any information regarding the inspection of the property and the cost breakdown. Under the circumstances, we cannot say that the court abused its discretion in this regard (see Rosa v New York City Tr. Auth., 55 AD3d 344, 345 [2008]; Mayorga v Jocarl & Ron Co., 41 AD3d 132, 134 [2007], appeal dismissed 9 NY3d 996 [2007]).
Supreme Court also properly limited the testimony of witness Jeffrey Beamish, a retired contractor. Defendant sought his testimony to point out defects that needed to be repaired and to establish the cost to finish the camp after plaintiff stopped work. The court permitted Beamish to testify concerning defects and repairs, but precluded evidence addressing the cost to finish construction, correctly finding that topic irrelevant because the parties' contract was on a time and materials basis, not a stipulated sum to complete the camp (see Wright v Selle, 27 AD3d 1065, 1068 [2008] [noting that with a contract on time and materials basis, the contractor "was under no contractual duty to perform the work for the amount of the estimate"]; Thompson v McCarthy, 289 AD2d 663, 664 [2001]; compare Inspectronic Corp. v Gottlieb Skanska, Inc., 135 AD3d 707, 709 [2016]; Rotsko v Rice, 221 AD2d 915, 915-916 [1995], lv dismissed 87 NY2d 1003 [1996]).
Supreme Court did not err in its charge to the jury. Evidence indicated that after defendant informed plaintiff that he refused to pay the outstanding balance, instead offering less than half of that balance to cover all past and future work to complete the camp, plaintiff ceased construction. These facts support a jury charge of anticipatory repudiation in favor of plaintiff (see Burns v Reiser Bros., Inc., 173 AD3d 1314, 1315-1316 [2019]; Joseph P. Carrara & Sons, Inc. v A.R. Mack Constr. Co., Inc., 89 AD3d 1190, 1191-1192 [2011]). Defendant did not preserve his argument that the court erred in failing to charge the jury with anticipatory repudiation in his favor, as he did not specifically request such a charge or object to the charge on this basis (see CPLR 4110-b; Peguero v 601 Realty Corp., 58 AD3d 556, 561 [2009]; Silverstein v Marine Midland Trust Co. of N.Y., 35 AD3d 840, 840 [2006]). The court properly denied defendant's requested jury charges on damages because they were unsupported by the law and the facts of this case.
Egan Jr., J.P., Lynch, Devine and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, with costs.