**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2121

_____

CIGNEX DATAMATICS, INC.

v.

LAM RESEARCH CORPORATION,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:17-cv-00320)
District Judge: Maryellen Noreika

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 20, 2021

_____

Before: CHAGARES, HARDIMAN, and MATEY, <u>Circuit</u> <u>Judges</u>.

(Filed: September 27, 2021)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Defendant-appellant Lam Research Corporation appeals from the District Court's judgment following a bench trial in favor of plaintiff-appellee CIGNEX Datamatics, Inc. ("Cignex") and against Lam on its counterclaims. For the reasons we explain below, we will affirm.

I.

Because we write only for the parties, our summary of the facts is brief. Lam provides equipment to semiconductor manufacturers. It uses its MyLam.com document database to support its customers over the internet. In 2014, Lam began searching for a vendor to upgrade the MyLam website. It soon selected Cignex, an open-source software consulting company.

On October 28, 2014, Cignex and Lam entered into a Master Services Agreement (the "MSA"). The MSA was a form contract that provided broadly for the "services that [Cignex would] perform and the fees which [Lam would pay] in return." Appendix ("App.") 155. More specifically, it provided that "[Cignex] shall render such services as may be necessary to complete in a professional manner the project described as follows: Software integration, and [proof of concept], for MyLam/PK Redesign Project." App. 159. Lam further agreed to pay Cignex for "all undisputed [Cignex] invoices within thirty . . . days" from the date the invoice was received. App. 155. Finally, the MSA had an integration clause incorporating all exhibits and future written modifications.

Cignex successfully completed its proof of concept for the MyLam project after the parties signed the MSA. The parties then executed a second statement of work

2

("SOW 2") that laid out the various tasks Cignex would need to perform for the project. SOW 2 specified that its "Terms & Conditions" were "Time and Material," App. 179, contained "[t]ime and [m]aterials" staffing and cost estimates based on the number of professional hours Cignex anticipated would be worked, App. 190-91, and provided that the "staffing, schedule and cost estimates" in the document were premised on assumptions that, if changed, would "affect the overall cost and delivery schedule[]" of the tasks, App. 188. The statement of work further provided that any changes to its scope would be made through a formal "change request" procedure. SOW 2 was integrated into the MSA and reconfirmed that Cignex would be paid "[a]s defined by [the] MSA." App. 192.

The MyLam project then proceeded rockily, experiencing several delays and complications, until the summer of 2016. Cignex issued numerous invoices to Lam during this time. Lam paid Cignex on all the invoices it issued between February and June 2015. But as Lam discovered ongoing technical problems with Cignex's implementation of the MyLam project, it informed Cignex in August 2015 that it no longer would pay any until Cignex could demonstrate that it could complete project milestones. Cignex continued to work on the project and approached Lam about starting payment once again at the start of August 2016. Instead, Lam issued a stop-work order to Cignex. Cignex never completed the MyLam project, but by September 2016, had issued four invoices since August 2015 that Lam never paid.

Cignex filed this lawsuit against Lam for breach of contract in March 2017, alleging that Lam failed to pay the amount due for the work that Cignex billed on the

3

unpaid invoices.  Lam answered with, inter alia, breach of contract counterclaims seeking recovery of all the fees it had paid to Cignex.  The parties proceeded to a bench trial.  The District Court held that the MSA and its integrated documents constituted a "time and materials" contract requiring Lam to pay Cignex for the professional services and expenses it had rendered, but which did not require delivery of a completed project to trigger Lam's obligation to pay.  The District Court therefore largely ruled in Cignex's favor on its breach of contract claim, and against Lam on its breach of contract counterclaim.  Having concluded that Lam breached the MSA by failing to pay for services rendered under the first three change requests, the District Court entered a $232,039.71 judgment against Lam, which was later amended to $292,604.27.  Lam timely appealed.

II.

Although the parties both assert that the District Court had federal diversity jurisdiction over Cignex's claim under 28 U.S.C. § 1332(a), Cignex did not adequately allege federal subject matter jurisdiction in its complaint.  Cignex pleaded that Lam "is a Delaware corporation," while Cignex "is a Michigan limited liability company that is a subsidiary of Datamatics Global Technologies Limited (Mauritius)."  App. 110.  Because diversity jurisdiction requires complete diversity of citizenship between the parties and "the citizenship of a limited liability company is determined by the citizenship of each of its members," Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 348 (3d Cir. 2013) (quoting Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010)),

4

Cignex could not rely on diversity jurisdiction as a limited liability company without alleging none of its members were Delaware or California citizens.

We therefore asked the parties to make supplemental submissions clarifying Cignex's identity and citizenship. Having reviewed the parties' submissions, it is undisputed that Cignex is a Michigan corporation with its principal place of business in Michigan, not a limited liability company, and thus a citizen of Michigan. 28 U.S.C. § 1332(c)(1). Pursuant to 28 U.S.C. § 1653, Cignex's complaint is deemed amended such that diversity jurisdiction exists. We have jurisdiction over this appeal from a final decision under 28 U.S.C. § 1291. "On appeal from a judgment entered after a non-jury trial, we review findings of fact for clear error, Fed. R. Civ. P. 52(a), and conclusions of law de novo." Hooven v. Exxon Mobil Corp., 465 F.3d 566, 572 (3d Cir. 2006) (quoting Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 208 (3d Cir. 2001)). Contract interpretation — "determining the meaning of the contract language and giving effect to the parties' intent" — is a question of fact we review for clear error, while contract construction — "determining the legal effect and consequences of contractual provisions" — is a legal question we review de novo. In re Nat'l Collegiate Student Loan Trs., 971 F.3d 433, 443 (3d Cir. 2020).

III.

Central to this appeal is whether the agreement between Cignex and Lam was a "time and materials" contract, and what obligations such a contract would place on Cignex to perform. The District Court concluded that a time and materials contract would require Cignex "to perform services and be compensated for those services while

5

it worked," in contrast to a "'fixed price' contract that obligated [Cignex] to deliver the completed MyLam.com project in order to receive compensation." App. 21. Lam, by contrast, argues that the basis on which it would pay Cignex is irrelevant to Cignex's performance obligations. It relies on the MSA's language that "[Cignex] shall render such services as may be necessary to complete [the MyLam project] in a professional manner," App. 159, to argue that the MSA required Cignex to deliver a completed MyLam project in order to be paid.

We agree with the District Court's reasoning. Delaware courts recognize a distinction between fixed price contracts and "open ended" contracts for time and materials, Thornton v. Meridian Consulting Eng'rs, C.A. 04C-01-001-RFS, 2006 WL 1174186, at *1 (Del. Super. Ct. Feb. 13, 2006), with professional projects involving an hourly rate schedule, estimated fees, and ongoing billing tending to fall into the latter category, see, e.g., Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC, C.A. No. S10C-03-004 RFS, 2010 WL 2802409, at *1 (Del. Super. Ct. July 12, 2010).[1] Because a time and materials contract does not specify "a stipulated sum to complete" a project, a contractor faces no contractual duty to perform the outlined work for the cost estimated. Adirondack Classic Design, Inc. v. Farrell, 122 N.Y.S.3d 790, 815 (N.Y. App. Div. 2020). Rather, a contractor will be owed for the services provided under the contract, even if the contractor's services are terminated prematurely. See Copeland v. Sullivan, No. Civ.A. 03L-12-022RFS, 2005 WL 791353, at *1-*3 (Del. Super. Ct. Apr. 5,

---

[1] The MSA provided that Delaware law governs in this case, and neither party disagrees that it does so here.

2005) (awarding damages on time and materials contract after contractor stopped doing work with project incomplete).

Applying the MSA and SOW 2's plain language, Lam was obliged to pay Cignex here. SOW 2's repeated references to "time and material," App. 179, hourly rates and costs, and rolling invoice-based billing, make clear that particularly in conjunction with the MSA's language describing itself as a contract for services, Lam and Cignex entered into a time and materials contract. Although Lam need not pay Cignex for finishing the MyLam project — that is, for work that Cignex did not do — the time and materials contract required Lam to pay Cignex for the partial work it did complete. The District Court therefore correctly entered judgment in Cignex's favor on its breach of contract claim.

Lam cannot escape this result by pointing to the MSA's language describing "services as may be necessary to complete" the MyLam project, or to SOW 2 language listing specific project deliverables. Lam Br. 18-19. At best for Lam, we would take these provisions as introducing ambiguity into the contract, which Lam suggests we use as an invitation to examine the parties' intent. But intent is a finding of fact we review for clear error, and while Lam points to testimony indicating that the parties intended to complete the MyLam project, Lam neither suggests — nor are we left with any "definite and firm conviction" — that the District Court made a mistake when it concluded that the parties intended to form a time and materials contract. DLJ Mortg. Cap., Inc. v.

7

Sheridan, 975 F.3d 358, 372 (3d Cir. 2020) (quoting EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010)).

The MSA's status as a time and materials contract thus resolves the remaining issues Lam raises on appeal.  The MSA was not illusory and lacking any metric for performance as Lam claims, but instead required Lam to pay Cignex for its efforts and expenses as any other time and materials contract would.  And because Lam admits that its own breach of contract claim "depends upon whether [Cignex] performed its obligations," Lam Br. 26, its claim fails where, as here, Cignex's claim succeeds.  The District Court therefore correctly granted judgment to Cignex on Lam's counterclaim.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.