GCM Prime, LLC v MM Dynamic of NY, Inc. (2024 NY Slip Op 51678(U))

[*1]

GCM Prime, LLC v MM Dynamic of NY, Inc.

2024 NY Slip Op 51678(U)

Decided on November 21, 2024

Supreme Court, Albany County

Platkin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 21, 2024
Supreme Court, Albany County

GCM Prime, LLC, Plaintiff,

against
MM Dynamic of NY, Inc.; DORA BALO A/K/A DORA BALO DOLENGEWICZ; MIKLOS MORITZ A/K/A MIKE MORITZ; POLY COATING SOLUTIONS, INC., Defendants.

Index No. 904032-24

Goldberg Segalla, LLP
Attorneys for Plaintiff
(Jonathan M. Bernstein, of counsel)
8 Southwoods Boulevard, Suite 300
Albany, New York 12211
Bellinder Law Firm
Attorneys for Defendants 
(Thomas J. Bellinder, of counsel)
625 N. State St., Suite 101
Jackson, Mississippi 39202

Richard M. Platkin, J.

Plaintiff GCM Prime, LLC ("GCM") sues to recover the principal sum of $60,207.82 based upon defendants' alleged defaults under a Forward Revenue Purchase Agreement dated September 5, 2023 and associated guarantees.
Following joinder of issue, GCM moves for summary judgment on its verified complaint. Defendants oppose the motion and also request a stay of this action.
[*2]BACKGROUND [FN1]

On September 5, 2023, GCM and defendant MM Dynamic of NY, Inc. ("Dynamic") entered "into a Forward Revenue Purchase Agreement and certain schedules, amendments, addenda and other documents related thereto" (collectively, "FRPA") (NYSCEF Doc No. 30 ["SOMF"], ¶ 1; see NYSCEF Doc No. 2 [FRPA]).
Under the FRPA, Dynamic sold to GCM the aggregate sum of $80,250 in future receivables (collectively, "Purchased Amount") for the purchase price of $60,000 (see SOMF, ¶ 1; FRPA, Preamble & art I). In connection with its purchase of future receivables, GCM was authorized to receive Dynamic's remittances in the initially-anticipated amount of $2,240.28 per week ("Approximation Payment") until such time as the Purchased Amount plus certain contractual fees (collectively, "Total Amount Sold") was remitted to GCM pursuant to the FRPA (see id.). The parties further agreed that Dynamic's performance obligations would be secured through guaranties given by the other defendants and the grant to GCM of a security interest in all of defendants' assets (see id.). 
In entering in the FRPA, defendants expressly agreed and acknowledged that:
(a) The transaction between GCM and Dynamic was a "true commercial asset sale" and not a loan transaction;
(b) Any broker involved in the transaction was not an agent or representative of GCM;
(c) All representations and promises made by a broker (or anyone else) are null and void unless set forth within the FRPA;
(d) Dynamic would "promptly respond" to GCM's attempts to communicate, and its failure to do so within three (3) business days would be a material breach;
(e) Dynamic would not enter into any other funding transaction(s), "stack" or otherwise sell or encumber its future receivables;
(f) Dynamic could, at any time, request a rescheduling or revision of the Approximation Payment or obtain a reconciliation of past payments, so long as it was not in default under the FRPA;
(g) Dynamic was acting as a fiduciary of GCM in connection with the administration, collection, preservation and remittance of purchased funds;
(h) The Expected Gross Monthly Revenue established in the FRPA was a reasonable, good-faith estimate of the average amount of Future Receivables that Dynamic expected to collect each month;
(i) Dynamic would deposit all funds collected or derived from the Future Receivables [*3]into an Authorized Deposit Account;
(j) Dynamic would provide three days' notice to GCM of any opening, closing, or material change to an Authorized Deposit Account; and
(k) Dynamic would deliver within three business days all information and documents reasonably requested by GCM to properly administer the FRPA (see SOMF, ¶ 2; FRPA, art I).
The FRPA provides that Dynamic shall be in default if it materially breached the terms of the FRPA or any warranty or covenant set forth therein (see SOMF, ¶ 3; FRPA, art IV). Additionally, Dynamic shall be in default if it: (i) made any material misrepresentation in the FRPA; (ii) performed any intentional act to impede or frustrate GCM's rights or remedies thereunder; (iii) voluntarily sold, assigned or transferred any of its businesses without GCM's consent; or (iv) entered into a stacking agreement without GCM's consent that resulted in a material adverse impact to Dynamic (see id.). 
As security for Dynamic's performance, defendants Dora Balo, Miklos Moritz and Poly Coating Solutions, Inc. (collectively, "Performance Guarantors") each signed and delivered to GCM a performance guaranty ("Performance Guaranty") that "unconditionally" guaranteed the full performance of Dynamic's obligations under the FRPA upon an Event of Default, including payment of the full Default Balance (FRPA, art V & Schedule E; see SOMF, ¶ 5). 
As additional security for Dynamic's performance and as security for the Performance Guarantors' performance under the Performance Guaranty, defendants pledged and granted to GCM a security interest in and lien upon all their assets, whether then-owned or after-acquired (collectively, "Collateral") (see SOMF, ¶ 6; FRPA, art VI). To perfect its security interest, GCM (or its affiliates) filed UCC-1 Financing Statements in New York and Florida (see SOMF, ¶¶ 7-10; NYSCEF Doc Nos. 3-6). 
On or before December 5, 2023, without notice to GCM, Dynamic directed its bank to stop making the weekly Approximation Payment of $2,240.28 (see SOMF, ¶¶ 11-12; NYSCEF Doc No. 22). 
GCM responded on December 7, 2023 by notifying Balo that the last Approximation Payment had been stopped, advising that the stop-payment direction was a direct violation of the FRPA and encouraging Dynamic to resolve the payment issue before things escalated (see SOMF, ¶ 13; NYSCEF Doc No. 23). Dynamic did not respond, and GCM emailed again on December 8, 2023, requesting "Current AR report along with September through November bank statements" and advising that modification of Dynamic's weekly payment was a potential option (SOMF, ¶ 14; see NYSCEF Doc No. 23). Again met with silence, GCM issued a written notice of default on December 11, 2023 (see SOMF, ¶¶ 15-16; NYSCEF Doc No. 7).
GCM commenced this commercial collection action on April 26, 2024 through the filing of a summons and verified complaint alleging six causes of action: (1) breach of contract against Dynamic; (2) breach of guaranty against the Performance Guarantors; (3) foreclosure of security interest; (4) unjust enrichment; (5) conversion; and (6) replevin (see NYSCEF Doc No. 1 ["Complaint"]).
Defendants joined issue on May 2, 2024 (see NYSCEF Doc No. 10 ["Answer"]) and served discovery demands upon GCM (see NYSCEF Doc Nos. 11-12).
On June 13, 2024, prior to the exchange of discovery, GCM moved for summary judgment on its complaint (see NYSCEF Doc No. 18). Defendants oppose the motion and [*4]request a stay of this action pending resolution of the summary proceeding brought by the Attorney General of the State of New York in Supreme Court, New York County, captioned People v Yellowstone Capital LLC et al., Index 450750/2024 ("Yellowstone"). 
DISCUSSION
A. Legal Principles
"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (id.). But if the movant establishes a prima facie case, the burden shifts to the opponent to demonstrate the existence of triable issues of fact or legal defense (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). All evidence must be viewed in the light most favorable to the opponent of summary judgment (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]), but "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to defeat a properly-supported motion (Zuckerman, 49 NY2d at 562).
To prevail on its claim for breach of contract, GCM must establish "the existence of a contract, [its] own performance under the contract, [Dynamic's] breach of its contractual obligations, and damages resulting from the breach" (Adirondack Classic Design, Inc. v Farrell, 182 AD3d 809, 811 [3d Dept 2020]). 
To recover under the Performance Guaranty, GCM must demonstrate that the Performance Guarantors "unconditionally guaranteed" the payment of Dynamic's obligations, and they defaulted on their obligations under the Performance Guaranty (Urstadt Biddle Props., Inc. v Excelsior Realty Corp., 65 AD3d 1135, 1136 [2d Dept 2009]). 
Finally, GCM establishes a prima facie case of replevin of collateral by showing that "the defendants were in default under the terms of the respective [agreements] and that, under the terms of the respective security agreements, it was entitled to take immediate possession of the collateral pledged therein" (Melrose Credit Union v Matatov, 187 AD3d 1009, 1012-1013 [2d Dept 2020] [citations omitted]). 
B. GCM's Prima Facie Case
The Court is satisfied that GCM has made a prima facie showing of entitlement to summary judgment on its complaint through the submission of the executed contract (FRPA), executed guarantee (Performance Guaranty) and proof of defendants' defaults thereunder (see Principis Capital, LLC v I Do, Inc., 201 AD3d 752, 754 [2d Dept 2022]). 
GCM's proof shows that Dynamic defaulted under the FRPA by: (i) issuing a stop payment instruction to its bank without notice to GCM; (ii) failing to provide GCM with requested financial documentation/information; and (iii) refusing to remit purchased receivables (see SOMF, ¶ 17; Complaint, ¶ 22).[FN2]

As a result, the full Default Balance became due and owing under the FRPA and Performance Guaranty (see SOMF, ¶ 18; Complaint, ¶ 23), and GCM became entitled to enforce its remedies of default against defendants and recover all amounts due, which, as of July 23, 2024, amounted to $66,330.87 (inclusive of contractual costs and fees, and post-default interest), together with attorney's fees, costs and interest (see SOMF, ¶¶ 19-20; NYSCEF Doc Nos. 24-25).
And as a secured creditor, GCM was entitled to demand delivery of the Collateral (see SOMF, ¶¶ 23-27; FRPA, arts IV, VI; see also Complaint, ¶¶ 42-43, 50). 
In opposition to the motion, defendants argue principally that the underlying transaction was a disguised usurious loan, and fact discovery is necessary regarding "the contract itself, the extent of the Plaintiff's damages [and] the methodology of the calculation of the Plaintiff's damages" (NYSCEF Doc No. 32 at 1). Defendants also seek a stay of this action during the pendency of the Yellowstone proceeding, which is said to involve similar disguised-loan transactions (see NYSCEF Doc No. 31 at 9-10). 
A. Stay
GCM opposes defendants' request for a stay on the grounds that (i) defendants "failed to make a cross motion," and (ii) Yellowstone "has nothing to do with this case" (NYSCEF Doc No. 36 at 5). 
CPLR 2201 provides that "the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." Thus, "a court has broad discretion to grant a stay in order to avoid the risk of inconsistent adjudications, application of proof and potential waste of judicial resources" (Chaplin v National Grid, 171 AD3d 691, 692 [2d Dept 2019] [internal quotation marks and citation omitted]; see 215 W. 84th St Owner LLC v Ozsu, 209 AD3d 401, 401 [1st Dept 2022]).
As GCM observes, defendants have not cross-moved for a stay. And while a court has discretion to stay a case on its own initiative in "exceptional circumstances" (Coburn v Coburn, 109 AD2d 984, 985 [3d Dept 1985] [internal quotation marks and citation omitted]), defendants have failed to demonstrate that this is such a case.
In Yellowstone, a summary proceeding commenced in New York County in March 2024, the Attorney General seeks to recover $1.4 billion from respondents therein based on allegations that they operated a predatory lending scheme under the guise of "merchant cash advances." However, defendants make no attempt to articulate how the FRPA and GCM's conduct in relation thereto is similar in material respects to the agreements and conduct at issue in [*5]Yellowstone.[FN3]
And, in any event, it is clear from GCM's undisputed SOMF that the facts of this case are readily distinguishable from the allegations made by the Attorney General in Yellowstone. Accordingly, defendants' informal request for a stay is denied.
B. Discovery
Defendants next contend that "there are outstanding discovery issues in this matter relevant to the [FRPA] itself, the extent of [GCM's] damages, the methodology of the calculation of the . . . damages," and other issues surrounding the transaction at issue that warrant the denial of GCM's motion for summary judgment (NYSCEF Doc No. 32). 
CPLR 3212 (f) provides: "Should it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion or may order a continuance to permit affidavits to be obtained or disclosure to be had and may make such other order as may be just" (emphasis added). The party claiming the need for discovery must "provide some evidentiary basis for its claim that further discovery would yield material evidence and also demonstrate how further discovery might reveal material facts in the movant's exclusive knowledge" (Arthur Brundage Inc. v Morris, 189 AD3d 2032, 2032 [3d Dept 2020] [internal quotation marks and citation omitted]).
GCM has laid bare its proof to properly support the motion for summary judgment, but defendants have not submitted any affidavits, documents or other evidentiary materials in opposition to the motion or in support of their request for a continuance (cf. id. at 2032-2033). Accordingly, the Court finds that defendants have not made the requisite showing under CPLR 3212 (f). 
C. Enforcement of the FRPA
Defendants' principal defense on the merits is that the FRPA is a disguised usurious loan. In determining whether an ostensible purchase transaction actually is a loan, courts look to numerous non-dispositive factors, including:
[1] the discretionary nature of the reconciliation provisions [i.e., provisions providing for reconciliation of payments based on actual receivables], [2] the allegations that defendants refused to permit reconciliation, [3] the selection of daily payment rates that did not appear to represent a good faith estimate of receivables, [4] provisions making rejection of an automated debit on two or three occasions without prior notice an event of default entitling defendants to immediate repayment of the full uncollected purchased amount, and [5] provisions authorizing defendants to collect on the personal guaranty in the event of plaintiff business's inability to pay or bankruptcy (Davis v Richmond Capital Group, LLC, 194 AD3d 516, 517 [1st Dept 2021] [citation omitted]).
The FRPA makes clear from the outset — in its plain language and, in some instances, through the use of capitalization and emphasized print — that the parties assented to a transaction for the purchase of Dynamic's future receivables, not a loan (see e.g. FRPA at 1, 2, 21). And careful examination of the terms of the FRPA fully confirms that characterization.
Under the FRPA, Dynamic's only payment obligation shall be to "faithfully and dutifully [*6]remit to [GCM] all Specified Proceeds collected by [Dynamic] on [GCM's] behalf" (id., § 2.13).As to reconciliation, the FRPA establishes a mandatory process (see id., § 2.12), but defendants neither requested reconciliation nor provided the bank statements and accounts-receivable information requested by GCM that would be necessary to perform a reconciliation (see SOMF, ¶¶ 14-15).
Further, the FRPA is for an indefinite term, with periodic payments projected upon Dynamic's receivables (see FRPA, § 1.2). And the Approximation Payments were determined through the FRPA methodology (see id., § 2.5) of applying the Specified Percentage of 5.5%, which is not "grossly inflated," to an Expected Gross Monthly Revenue calculated in accordance with Dynamic's 12-month historical average, which Dynamic agreed was fair and accurate (see e.g. id., Schedule F, Question 10 of Seller Questionnaire). And the default interest rate of 16% is not usurious (see generally Adar Bays, LLC v GeneSYS ID, Inc., 37 NY3d 320, 326 [2021]).
As to recourse, GCM demanded payment of the full remaining balance only after multiple defaults by defendants (see NYSCEF Doc No. 7). Moreover, a bankruptcy filing by Dynamic "shall not be a default" under the FRPA, unless the filing demonstrates that Dynamic fraudulently induced execution of the purchase transaction (FRPA, § 1.2).
In fact, the relevant provisions of the FRPA are highly similar to those at issue in Principis Capital, wherein the Second Department concluded that "the transaction . . . is not a loan" (201 AD3d at 754; see Kodiak Funding, LLC v Golden Hosp. LLC, 2022 NY Misc LEXIS 3782, *6-7 [Sup Ct, Monroe County 2022]; IBIS Capital Group, LLC v Four Paws Orlando LLC, 2017 NY Slip Op 30477[U], *4 [Sup Ct, Nassau County 2017] [purchases and sales of future receivables and sales proceeds similar to those involved herein "are common commercial transactions expressly contemplated by the Uniform Commercial Code" (collecting authorities)]; accord Womack v Capital Stack, LLC, 2019 WL 4142740, *7 n 9, 2019 US Dist LEXIS 148644, *15 n 9 [SD NY, Aug. 30, 2019, No. 18-CV-04192 (ALC)] [collecting authorities]). 
The conclusion that the transaction described in the FRPA is a sale and not a loan is fatal to the bulk of defendants' affirmative defenses (see e.g. Answer, First, Second, Third, Seventh, Ninth and Thirteenth Affirmative Defenses).
Further, contrary to defendants' contention, there was "true consideration" exchanged (NYSCEF Doc No. 31 at 24), as GCM wired the net proceeds of the Purchase Price to Dynamic (see FRPA, § 1.7 & Schedule B; SOMF, ¶ 4; NYSCEF Doc No. 35, ¶ 12).
Finally, the record establishes that GCM perfected its security interests by filing UCC financing statements (see NYSCEF Doc Nos. 3-6; cf. Answer, Fourth Affirmative Defense) and that UCC notices of lien permissibly were sent following the default under UCC 9-406 (see FRPA, § 4.2 [c]; NYSCEF Doc No. 35, ¶ 15).
Accordingly, defendants have failed to raise a triable issue of fact or legal defense in opposition to GCM's prima facie demonstration of entitlement to judgment as a matter of law.
CONCLUSION
Based on the foregoing,[FN4]
it is
ORDERED that plaintiff's motion for summary judgment is granted; and it is further
ORDERED that plaintiff shall submit a proposed order & judgment in accordance with [*7]the foregoing, as well as an affidavit with respect to attorney's fees, costs and any expenses associated with this action that plaintiff seeks to recover. Such submission shall be made, on notice to defendants, within twenty (20) days from the date of this Decision & Order. Defendants shall have fifteen (15) days in which to respond to the form of the proposed order & judgment and the reasonableness of the amount of counsel fees sought by plaintiff.
This constitutes the Decision & Order of the Court, the original of which is being uploaded to NYSCEF for entry by the Albany County Clerk. Upon such entry, counsel for plaintiff shall promptly serve notice of entry upon all parties entitled to such notice.
Dated: November 21, 2024
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 1-10, 18-36.

Footnotes

Footnote 1: GCM submitted a statement of material facts (see NYSCEF Doc No. 30), supported by the verified complaint and other evidence of record (see Rules of Commercial Div of Sup Ct [22 NYCRR 202.70 (g)] rule 19-a ["Rule 19-a"]; see also Uniform Rules for Trial Cts [22 NYCRR] § 202.8-g), to which defendants did not respond. And defendants have not submitted any client affidavits or documentary evidence to controvert GCM's facts (see NYSCEF Doc No. 32). Accordingly, GCM's facts are deemed "admitted for purposes of [its] motion" (Rule 19-a [c]; see also 22 NYCRR 202.8-g [c]; Leberman v Instantwhip Foods, Inc., 207 AD3d 850, 851 [3d Dept 2022]). 

Footnote 2: Defendants argue that the affidavit of GCM's representative is insufficient to satisfy the business records exception of CPLR 4518 (a) (see NYSCEF Doc No. 31 at 18). The Court disagrees. "A proper foundation for the admission of a business record must be provided by someone with personal knowledge of the maker's business practices and procedures" (Citibank, N.A. v Cabrera, 130 AD3d 861, 861 [2d Dept 2015] [citations omitted]; see Unifund CCR Partners v Youngman, 89 AD3d 1377, 1378 [4th Dept 2011]). Here, the affiant, Richard Gipstein, is one of the two principals of GCM, and he attests to familiarity with all relevant business practices and procedures (see NYSCEF Doc Nos. 1, 24, 35). Defendants have not identified any particular deficiency in the documents authenticated by Gipstein. Nor have they have presented any evidence or testimony to refute Gipstein's averments or the business records to which he refers.

Footnote 3: As GCM properly observes, defendants essentially seek to impute "guilt by industry" to support its informal request for a stay (see NYSCEF Doc No. 36 at 6).

Footnote 4: Defendants' remaining arguments and defenses, to the extent not expressly addressed herein, have been considered and found to be without merit.